The right of the plaintiffs to the accounts demanded has been resisted on several grounds.
In the first place, it is insisted that the claim of the plaintiffs cannot be upheld unless the instrument of 13 April, 1830, be established as a deed, effectual to transfer the interest of Ann Charteris in the personal estates of her deceased uncle and brother to the trustees therein named. *Page 380 
The plaintiffs have not, it is argued, pleaded this instrument as a will, or testamentary disposition, to take effect after her death, and, therefore, cannot claim under it as such; and if they had so pleaded it, this Court could not recognize it as a will or testamentary disposition until its validity had been established by probate in the proper forum. Now, without denying that the instrument had been executed in the form and with the ceremonies required in the execution of deeds, it is, nevertheless, insisted that it cannot operate as a deed, because its dispositions are, in their nature, merely testamentary, purporting to take effect after the death of Ann Charteris, and dependent upon her death as an event necessary to the consummation of the instrument. To support these views the attention of the Court, besides being called to the general scope of the instrument, was particularly directed to that part of the proem wherein the maker uses these words, "considering the propriety of so arranging my affairs, while I am of sound disposing mind and memory, as to prevent disputes at my death"; also to the disposition made of "all and sundry the heritable and movable, real and personal means and estate now belonging to me, or that may pertain and belong, or be due and indebted to me at my death"; also to the clause, "and I do hereby constitute and appoint my said trustees, and the survivors and survivor of them, and the heir of the survivor, to be my sole executors and universal legators and intromitters, with the said movable and personal means and estate, secluding and debarring all others"; also to one of the trusts therein declared, viz., "in trust for the payment of all my just and lawful debts, death-bed and funeral expenses"; and, finally, to the clause in which she declares, "and I reserve my own life rent in the (470) premises, and power to alter, innovate, and revoke these premises, in whole or in part, at any time hereafter; and dispense with the delivery hereof, and declare these presents to be valid and effectual, though found lying in my own repositories, or undelivered at the time of my death." These, it is said, clearly show, notwithstanding the form of the instrument, that it was made in contemplation of death, for the disposition of property that might not be acquired until the last moment of life, for purposes to be executed after death, with the reservation of the use of the property, and the power of revocation during life, and conferring an office which could be called into existence but by the death of the maker of the instrument; that it is therefore an instrument altogether testamentary in its properties, and cannot, without violence to the plain intent of the maker, be allowed to operate as a deed taking effect from the execution thereof.
We assent to the proposition that the plaintiffs cannot have relief by this bill if the instrument in question be one simply testamentary; and we also think (although it is unnecessary to give a judicial opinion upon *Page 381 
that point) that were the instrument a will or testament, the plaintiffs could not set it up by a bill, but ought to bring it forward before the appropriate tribunal, have the letters of administration recalled and vacated, and cause it to be there proved as a will. But before we refuse to the instrument the operation of a deed, we must be fully satisfied that it is simply testamentary, and cannot, by law, operate as an act inter vivos.
The defendant Jane McDonald is called to account for the conduct of her testator in the management of the estate of Ann Charteris, which was confided to him as the administrator of the said Ann. The defendant Robert Martin is called to account for his management of the same estate afterwards confided to him, also as her administrator. Those grants of administration, unrepealed, conclusively establish that the said Ann died intestate. Now, although it does not necessarily follow that if the instrument in question be not testamentary, it must have effect as a deed; and although our declaration that it cannot operate as a deed may consist with the established fact of her intestacy, nevertheless, this fact is one which should render us very cautious in giving to the (471) instrument a construction that must render it nugatory. It is the duty of courts to be benignant in the interpretation of solemn and deliberate acts, so that they may avail, if possible, rather than perish altogether. Besides, the plaintiffs have not in their bill alleged in general terms that the said Ann, by deed duly executed, had conveyed all her interest in the property in question to the plaintiff's trustees, for the sole and exclusive benefit of the plaintiff, the cestui que trust; but have set forth, almost verbatim, the operative words of the instrument, and the trusts therein declared; and have referred to a copy of the instrument, ready to be produced, and which they proffered to produce on demand.
Now, it seems to us that if the defendants meant to raise the defense that the instrument so set forth, to an inspection of a full copy whereof they were entitled before making defense, and the execution of which they called upon the plaintiff to prove, was, when proved, inoperative by the law of Scotland to transfer the interest which it purported to convey, they ought, in fairness, to have raised that defense upon the record, so as to put the fact in relation to that law distinctly in issue, and apprise the plaintiffs of the necessity of exhibiting proofs thereupon. Certainly, they have not, by their answers, admitted, and are not, therefore, now precluded from denying the fact; but we do not expect the same plenary proof to establish it, nor are we disposed to draw the same inferences from scantiness of proof in relation to it, which we might have thought it reasonable to require and infer if the pleadings had shown that it was a material fact, directly controverted between the parties. *Page 382 
The only direct evidence which we have concerning the law of Scotland on this subject is contained in the deposition of James Thompson, a professional gentleman of that country, who testifies "that the deed of settlement" which has been inspected by him "is a deed, completed according to the forms established by the law of Scotland, for executing the deeds of illiterate persons who cannot write." We must therefore regard it as a deed, in all respects complete, unless its contents show that it cannot operate as a deed. There is always difficulty in the court (472) of any country undertaking to fix the construction of an instrument made in a foreign land, with the laws of which it is not familiar. The only mode of encountering that difficulty, where there is not an allegation established by proof, that the instrument has a technical meaning, different from that which its words import in their ordinary sense, is to understand the instrument according to its obvious import.
There are, undoubtedly, passages in this deed which, referring distinctly to things to be done after the death of the maker, give it the similitude of a testamentary paper. We are not so much struck with the clause in which she constitutes her said trustees and the survivors and the survivor of them, and the heir of the survivor, "to be her sole executors and universal legators and intrommitters, with the said movable and personal means and estate, secluding and debarring all others," for most of the terms here employed are evidently merely technical, and used with reference, not to our law, but to the law of Scotland; and without an acquaintance with that law they are to us necessarily in a great measure unintelligible. We are the more sensible of the hazard of undertaking to expound these technical terms, by adverting to other parts of the instrument, where technical language is also used, or there is a reference to legal forms with which we are unacquainted. Towards the close of the instrument the supposed grantor says, "and I dispense with the delivery hereof, and declare these presents to be valid and effectual, though found lying in my own repositories, or in the custody of any other person, undelivered at the time of my death." And again: "and I consent to the registration hereof in the books of council and of sessions, or others competent, therein to remain for preservation; and that all necessary execution may pass on a decree to be interposed thereto, in common form, and for that purpose constitute . . . my procurators." If, upon the technical meaning which the word "executors" bears in our law, that is to say, of persons appointed to execute the will of one who is deceased, we should judicially conclude that the instrument itself must be testamentary, while we are ignorant of the (473) meaning of the immediately following terms, "universal legators and intrommitters," while we know not what is meant by the maker of an instrument, proved to be a deed completed with all the forms *Page 383 
of law, dispensing with the delivery thereof, and declaring it to be valid and effectual, although it should never be delivered in her lifetime, while we are wholly uninformed what is the legal effect of a "consent that it shall be registered in the books of council or session," or of consent "that execution may pass on a decree to be interposed thereto in common form, and of the constitution of" (blank) "procurators for that purpose," our conduct would be scarcely less rash than that of an individual who should venture to perform on oath the office of interpreter of a speech in a foreign tongue, because he caught one word, the sound of which was familiar to his ears. But this reference to the disposal of the property and to the conduct of the trustees after death is manifested by language in no respect technical, and as to the meaning of which there is little or no room for mistake. The motive assigned for executing the instrument, the disposition attempted of property that might be acquired thereafter and before death, and the injunction on the trustees to pay death-bed and funeral expenses, unequivocally point to the death of the maker as a period after which some at least of her purposes were to be executed, and are indications of the testamentary character of the instrument well deserving of notice. But they are by no means conclusive. It does not follow, because an instrument is to produce important results after death, that therefore it must be testamentary. To render it testamentary it is essentially necessary that it should be made to depend on the event of death as necessary to its own consummation. Permanent dispositions of property, however made, whether by acts perfect in themselves or to be perfected by death, must be made with a view to their operation long after the disposer shall have ceased to exist; and although the desire of removing strife about the enjoyment of property when its present owner shall be no more is a peculiarly appropriate inducement for a testamentary disposition, it is by no means an irrational motive for making a settlement during life. And it may also be remarked that however inoperative the instrument may be as a deed to pass property, thereafter to be acquired, and however as (474) to that property it may manifest a testamentary inclination, it can have its full effect on the property then held, and so far there is no necessity for denying to it its proper action.
But whatever influence the indications adverted to might have, unexplained and unopposed, upon the character of this instrument, they are met by others so strongly manifesting the design to do thereby a perfect and consummated act that we feel little difficulty in declaring the instrument valid as a deed. The form of it is a circumstance by no means unimportant. It is certainly true that an instrument conveying a benefit, whatever form it may assume, if it has the character of a testamentary paper to be consummated by death, may be admitted to *Page 384 
probate as testamentary. And it is also true that from a principle which more or less governs all courts, to be astute in finding out a mode of giving effect, in one way or another, to every instrument (as was observed by Sir John Nicholl in Thorold v. Thorold, 1 Phill., 1), papers containing dispositions of property to be made after death, although made in the form of and intended to operate as settlements, deeds of gift, bonds or other perfect acts inter vivos, yet because they could not operate in that character, have been allowed to operate as wills or testamentary papers. And among the most prominent of the instances referred to by that learned judge in which this astuteness has been practiced are cases of "Scotch conveyances," Masterman v. Maberly, 2 Nagg., 235. Yet these very considerations show that, prima facie, the form of the instrument and the mode of its execution are to be regarded as indicating its distinctive character, and the astuteness exercised to impress upon them a different character is not only evidence that for this purpose it was necessary to resort to astuteness, but this astuteness is permitted for the purpose only of securing to it some operation.
The general structure of the instrument very clearly, we think, imports an immediate conveyance. There is not one word in it of a gift after death, of devise, or of bequest. And here it is fit to notice an (475) error in the bill where the word "bequeath" is improperly inserted. It does not occur in the instrument. All men are thereby called upon to take notice, these are its words, "that I have given, granted, assigned, disposed and conveyed, as I give, grant, assign, dispose and convey," the property therein described to the persons therein named. She then proceeds to covenant with these grants as follows: "and I bind and oblige me and my heirs and successors [it is difficult to imagine who these are if the covenantees be in our sense of the word her executors], to make and deliver all writings necessary for making these presents valid and effectual." Then, after setting forth the main purposes and trusts for securing the performance whereof the conveyance has been made, some of which, it is admitted, cannot be completely executed until after her death, and in order the better to accomplish the object thereof, power is given to the grantees in these words, "with power to the said Alexander Kissock, etc., to sell and dispose of the said estate, to bring actions for the recovery thereof, to grant conveyances and discharges to the purchasers and others, and generally to do everything in the premises" (not which I could do, if living, but) "that I could have done before the granting hereof." If any lingering doubt yet remained as to the true character of the instrument, it ought to be removed, we think, by the care which she has used to secure to herself the income or annual value of the property so conveyed in trust, and the power which she has expressly reserved during life, of revoking the *Page 385 
act which she has done. The language of the deed is, "and I reserve my own life-rent in the premises, and power to alter, innovate, or revoke these presents in whole or in part, at any time hereafter." How idle is the reservation of a life-rent, or of the income during life, out of the proceeds of property which until death was to remain wholly and absolutely her own! How nugatory the reservation of a power to revoke during life that which was to become her act only upon her death!
Nor do we feel the difficulty which has been suggested in the argument, of a repugnancy between the reservation to the donor of a life-rent and the immediate gift to the trustees of the property out of which it is to arise. The reservation is not of the property itself, and can clearly be supported by our law, and, as we suppose, by every law (476) which holds it the duty of trustees to preserve inviolate the confidence reposed in them, as a trust which they are enjoined to permit or fulfill.
Upon full consideration of this objection, therefore, the Court is of opinion that the instrument in question purporting to be a deed is valid as a deed to convey the property now in controversy to the persons therein named for the trusts declared by the grantor.
The next objection to the relief of the plaintiffs relied on by the counsel for the defendants is that the trustees are improperly joined with the plaintiff Sarah as parties plaintiffs. In support of this objection it is said that if the deed of 13 August, 1830, conveyed the property in dispute to the trustees, then it appears, by the showing of the plaintiffs themselves, that these trustees, by their deed of transference and devolution of 4 and 6 August, 1832, assigned to the plaintiff Sarah the whole of their estate, title and interest; so that at the time of filing this bill they had no remaining interest therein or concern therewith. It is then insisted that according to the well established principles of courts of equity, if there be several plaintiffs in a bill, some of whom have an interest and others have no interest in the matter of the suit, and this appear upon the face of the bill, a general demurrer to the whole bill is a good defense. King of Spain v. Machado, 4 Russ., 225 (3 Eng. Con. Ch., 643). It is further insisted that if this do not appear on the face of the bill, but is brought forward by a plea, such plea is also a good defense to the suit. Makepeace v. Haythorn, 4 Russ., 224; ibid., 652. And it is contended that whether this appear on the face of the bill or not, yet upon its being shown at the hearing, none of the plaintiffs will be permitted to have a decree; and this position is supposed to be strongly intimated, if not distinctly declared, by the master of the rolls in Bill v. Cureton, 2 Mylne Keene, 503 (8 E. C. C., 103), and by the Chancellor in Glynn v. Soures, 3 Mylne Keene, 450 (9 E. C. C., 132). *Page 386 
For reasons which shall be assigned hereafter, we shall not enter into a full consideration of the questions of pleading and practice (477) which this objection seem to present; but we deem it not amiss to observe that, notwithstanding the intimations of opinion referred to, we leave it as a point fit for further examination, and quite open for discussion, whether an objection to a want of interest in some of the parties plaintiffs, which might have been effectually urged by way of demurrer or plea, will be deemed fatal to the relief of the others if, at the hearing, the case be made out on which the bill claims relief. And while we distinctly admit the position that where one who has no right to sue by himself, and who is an entire stranger to the defendant, is joined as a coplaintiff with those having a right to sue the defendant by themselves, advantage may be taken of this improper joinder by plea or demurrer, we are not prepared to say that this principle ever applies where assignor and assignee join in the assertion of a claim as to which there has been at least — if it do not yet continue — a privity between each of them and the defendant. We find the doctrine thus far completely settled that in those cases where the assignment is absolute and unconditional, and leaves no remaining liability or right in the assignor which can be effected by the decree, the assignor need not make him a party. But we have not found that if he be needlessly made a party this constitutes a valid ground of defense. See Ryan v. Anderson, 3 Mad., 97; Smith v. Brooksbank and Moore v. Blagrave, 7 Sim., 18 (9 Con. E. C., chs. 456, 458). But, however this may be, it is certain that if there remain, notwithstanding the assignment, any interest, right, or liability in the assignor which can be affected by the decree — a scintilla juris, even — there he is a proper and, in most instances, a necessary party. Such is the case here. The bill, indeed, states that the trustees executed to the plaintiff Sarah a certain deed of devolution and transference, whereby they conveyed to her the whole trust property as amply as they had held it for her use, and whereby they denuded themselves of their trust, and the feme plaintiff became entitled to receive the funds; but this allegation must necessarily be understood as charging only as full a devolution and transference as by their deed the said trustees could rightfully make. It was not in their power, by any (478) instrument which they might execute, to transfer to the feme plaintiff so thoroughly and absolutely all the rights and authorities conferred upon them by the deed of settlement as to leave them, in the contemplation of this Court, without a material interest in and liability for the property, the subject of contest. Under the deed of settlement the enjoyment of the property is not only secured to the sole and exclusive use of the plaintiff Sarah, but every interference of her husband therewith is most strictly interdicted. This Court cannot allow an operation *Page 387 
to their deed of transference which will put this property directly into the hands of the husband; and such would be the necessary result of a transference of the whole interest to her without the intervention of a trustee. But, besides, there are certain contingent trusts for the benefit of the issue which the said Sarah may have, which trusts have been confided to the said trustees, and which they cannot devolve upon others. The effect — and the whole effect — of this deed of devolution, as regards this suit, is a solemn acknowledgment by the trustees of their assent that the whole immediate beneficial interest in this property may be decreed to their coplaintiff. We are therefore of opinion that this objection also will not avail the defendants.
The remaining objection is for that the bill has made parties defendants thereto not only the administrator de bonis non of Ann Charteris, but the executrix of the deceased administrator; that the latter is responsible, not to the plaintiffs, but to the administrator de bonis non; that the relief of the plaintiffs is direct against such administrator, and should therefore be sought against him only. This objection, we think, is clearly untenable, and in support of that opinion we rely on the authority of Brotten v. Bateman, 17 N.C. 115, and refer to the reasons assigned in that case, and also in Holland v. Pryor, 1 Mylne Keene, 237 (7 Con. Eng. Ch., 22), in both of which the very objection was deliberately considered and overruled.
There must be a reference to take the accounts required by the plaintiffs.
PER CURIAM. Decree accordingly.
Upon the return of the report, made by the commissioner under (479) the order of reference to state the accounts in this cause, exceptions were filed, and thereupon the following opinion was pronounced by his Honor: