CHESTER CURRIER GRAY & another, executors, *vs.* HOWARD
      GREER McCAUSLAND & others.

Worcester.     September 27, 1943. — October 29, 1943.

Present: FIELD, C.J., DONAHUE, QUA, & DOLAN, JJ.

*Devise and Legacy*, Construction of particular phrase, Creation of trust,
      Life estate. *Trust*, Express: what constitutes.

The facts, that a husband and wife during their lives maintained separate
      safe deposit boxes for their separate securities, that the wife was given
      by her husband's will the residue of his estate "absolutely" with a
      request, not to be "construed . . . as a limitation," that she dispose
      of the portion of his estate unexpended at her death among his surviving
      children, her stepchildren, that during eleven years between his death
      and hers she kept segregated in the box formerly his not only the bulk
      of the securities originally received from his estate but also securities
      acquired as a result of an investment made by her of the proceeds of
      some of such securities and evidences of savings bank deposits and
      coöperative bank shares which she had transferred into her own name,
      required that provisions of her will giving to the stepchildren "all the
      property of every name and nature left me by my late husband . . .
      as shown in the inventory of his estate" and making other disposition
      of her "property apart from that left me by my late husband," be
      interpreted to mean that the stepchildren should receive all such prop-
      erty which the wife at the time of her death kept in the safe deposit
      box formerly her husband's; no question of ademption arose.
No precatory trust nor mere life estate, but an absolute estate in fee, was
      created by the will of a husband giving his wife the residue of his estate
      "absolutely; to use the income and as much of the principal . . . as
      she may consider necessary and desirable for her proper maintenance
      and comfort," with a "request," not to be "construed . . . as a limita-
      tion upon the use by . . . [her] of my estate," that she dispose of the
      portion of the estate unexpended at her death among his children, her
      stepchildren.

PETITION, filed in the Probate Court for the county of
Worcester on April 28, 1942.

The case was heard by *Atwood*, J., and a decree was
entered "that the legatees under clause First in said will
are entitled to all property left by the testatrix at her de-
cease, which came to her from the estate of her husband,
including real estate and tangible property, and which she

held intact to her death in the same form or investments, including such as were simply transferred to her name, but not including stock or bonds which were sold or called and the proceeds reinvested, and not including money withdrawn from banks and reinvested in other banks, or other investments."

*J. C. Jones, Jr.,* for the respondent Howard Greer McCausland.

*L. M. Erskine,* for the respondent Sarah Isabelle McCausland.

*R. W. Frost,* for the respondent Meikle.

QUA, J.   This is a petition for instructions by the executors of the will of Barbara W. McCausland, late of Southborough.

The testatrix died in 1942.   She was the widow of James Fenton McCausland, who had died in 1931, leaving a will to which reference will later be made.   She was his second wife and was the stepmother of his two children.   She had known her stepchildren since their early childhood and, in general, had remained on terms of friendly intimacy with them until her death.   She had no children of her own.   She left personal estate inventoried at $56,614.17 and real estate consisting of the residence in Southborough formerly belonging to her husband inventoried at $9,000.

Mrs. McCausland's will, made in 1936, contained these provisions:

"After the payment of my just debts, funeral expenses and charges of administration, I give, devise and bequeath, as follows:

"First:  To the two children of my late husband, SARAH ISABELLE McCAUSLAND of Kobe College, Japan, and HOWARD GREER McCAUSLAND of Southborough, all the property of every name and nature left me by my late husband, at his death, as shown in the inventory of his estate on file in the Registry of Probate in said County of Worcester, in equal shares, except that the amount of One Thousand ($1000.) Dollars already paid to said Howard is to be deducted.   Said payment of One Thousand ($1000.) Dollars is not to be considered as an advancement to said Howard.

"Second: As I have property apart from that left me by my late husband, I give, devise and bequeath the same as follows: . . ." Then follow several money legacies, aggregating $12,000, including a legacy of $1,000 to each of the testatrix's stepchildren previously named. Then comes a clause creating a trust of the residue for the benefit of the testatrix's niece for life and, at her death, of her surviving children.

The primary question is whether the gift in clause "First" to the testatrix's stepchildren of "all the property of every name and nature left me by my late husband, at his death, as shown in the inventory of his estate" includes the proceeds of certain investments which were shown in the inventory of the husband's estate but which have been changed during the subsequent lifetime of the testatrix. In deciding this question evidence was properly admitted of the circumstances and conduct of the testatrix and of facts within her knowledge in order to show in what sense she used these words in her will. This evidence is practically unchallenged and in our opinion is highly significant. We state it in brief outline in the following paragraph, drawing when convenient upon the findings of the judge for that purpose.

The testatrix's husband left a will in which he devised and bequeathed the residue of his estate, with an unimportant exception, to the testatrix "absolutely; to use the income and as much of the principal thereof as she may consider necessary and desirable for her proper maintenance and comfort," but with the "request, however, that she dispose of whatever portion of . . . [his] estate . . . [might] remain in her hands unexpended at the time of her decease among . . . [his] then surviving children in accordance with her judgment of their necessities at that time," and with the further provision that "this request shall not be construed in any way as a limitation upon the use by my said wife of my estate." Under this clause passed securities inventoried in his estate at $37,074.03. At the time of his death he and the testatrix had separate safe deposit boxes at the same bank. His box contained his securities, including savings bank books, coöperative bank certificates or

books, and also contained certain of his papers. Her box contained her securities and bank books. The testatrix continued to hold both boxes until her death and had access to both but continued to keep the securities and bank books that had been her husband's in the box that had been his and to keep her own securities and bank books in the box that had always been hers. His bank books, including cooperative bank shares, were transferred to her name but were still kept in his box. During the interval of about eleven years between the death of her husband and her own death the testatrix made only seven changes of investments in the assets of his estate. Six of these (four of them before she made her will and two afterwards) were made necessary by the calling of bonds, and in each instance the substitute security was deposited in the husband's box. In most of these instances a slight excess of the call price of the bonds over the purchase price of the new investment remained in the testatrix's own checking account. The seventh change (made before her will) consisted only in combining three small savings bank deposits into one larger one, and the book representing the combined deposit was placed in the husband's box. During the same period the testatrix withdrew for her own use one of his savings bank deposits of $1,350.36 and withdrew $1,000 from each of two other of his books, one of these sums being used to pay $1,000 to her stepson — presumably the $1,000 referred to in clause "First" of her will. In other respects the testatrix retained intact until her own death "all the property" left her by her husband, with the possible exception of a few inconsequential items of household furnishings, and she kept all the securities derived from his estate, including the evidences of savings deposits and coöperative bank shares, segregated in his box. Four years before she made her will, at the time of the first change of investment, and "always," she told her confidential adviser who assisted her in her transactions to put the' substituted securities in her husband's box, and that she wanted to keep the two boxes separate as to contents: "that is, what came to her from her husband and what she herself had, along with her sister in the other box." Her letters to

one or the other of her stepchildren written at various times, but for the most part before the making of the will, contain numerous expressions indicating that she kept in mind the "request" in her husband's will that she should "dispose" among his children of any portion of his estate that she might not expend in her lifetime; that she adopted the settled policy of keeping the property left her by her husband with its proceeds whole and separate from her own property and of preserving it for her husband's children; that she adhered to that policy until her death; and that she repeatedly referred to her husband's property in contrast to her own property as if they were separate estates.

Giving this evidence the weight to which it is entitled, we think the conclusion follows that when the testatrix used the words "all the property of every name and nature left me by my late husband, at his death, as shown in the inventory of his estate . . ." she meant not merely such items of investment as had remained unchanged (except for putting the bank books in her own name), but that she included also the proceeds of her husband's investments which she had carefully preserved and the evidences of which she had continued to keep in his box apart from her own estate and in readily identifiable form. She regarded the property left her by her husband in the light of a separate fund having continuity and, like a trust fund, capable of being described as an entity. In reaching this conclusion we make no use of any declarations of testamentary intent or of the testatrix's opinion of the meaning of her will. We use the evidence only in so far as it helps to put us in the position of the testatrix, so that we may know the facts that she had in her mind when she chose her words, in order that we may judge of the sense in which she used them. We are well within the established bounds. See, for example, *Wadsworth* v. *Ruggles,* 6 Pick. 63; *Morse* v. *Stearns,* 131 Mass. 389; *Gould* v. *Chamberlain,* 184 Mass. 115, 121; *Best* v. *Berry,* 189 Mass. 510; *Polsey* v. *Newton,* 199 Mass. 450; *Lydon* v. *Campbell,* 204 Mass. 580; *Sherwin* v. *Smith,* 282 Mass. 306, 310; *Boston Safe Deposit & Trust Co.* v. *Prindle,* 290 Mass. 577, 582; *Adams* v. *Adams,* 308 Mass. 584, 590; *Poor* v. *Hodge,* 311

Mass. 312, 317; and *Burgin* v. *Patch*, 312 Mass. 219, 223.

The words of the will are susceptible of the interpretation ascribed to them. The words "all the property of every name and nature left me by my late husband, at his death" may well include items of that property which have merely undergone the changes naturally to be expected during the lapse of years, but which have never lost their identity and have never been mingled in the slightest degree with other property, and such altered property may well be said to have been "left me by my late husband, at his death, as shown in the inventory of his estate." The inventory of his estate would naturally be looked to for the purpose of ascertaining what property he left "at his death," and, upon examination, that inventory would be found to contain the identifiable exclusive source of every item left by the testatrix in her husband's box at her death. This construction is also favored by the sharp contrast between "all the property . . . left me by my late husband" disposed of by clause "First" of the will and the "property apart from that left me by my late husband" disposed of by clause "Second." The testatrix would hardly describe assets that represented merely a changed form of investment of property left her by her husband and always kept separate from property derived from other sources as property "apart from" that left her by her husband. The construction adopted eliminates the possibility of a third class of property not clearly to be included within either of the two divisions into which, for the purposes of her will, she has separated the property over which she had testamentary power.

On this interpretation of the will no question of ademption arises. This is not a case where the testatrix has inserted a legacy which can be satisfied only by a particular item or items of property and then has disposed of that property before her death, leaving nothing upon which the provision in the will can operate. Here the testatrix has in substance provided that the legacy shall consist of the property left her by her husband, and at the time of her

death, which is the time as of which the will speaks, she had all but a small fraction of that property and had preserved it in readily identifiable form, so that the will can operate upon it. The case is therefore distinguishable from *Mitchell* v. *Danforth*, 12 Cush. 330, *Moffatt* v. *Heon*, 242 Mass. 201, and *First National Bank of Boston* v. *Perkins Institute for the Blind*, 275 Mass. 498. Compare also *White* v. *Winchester*, 6 Pick. 48; *Richards* v. *Humphreys*, 15 Pick. 133; *Tomlinson* v. *Bury*, 145 Mass. 346. See *Clark* v. *Packard*, 9 Gray, 417.

Further questions as to the effect of the husband's will have been raised and somewhat argued, and as they might affect the decree to be entered we have considered them.

The husband's will did not create a precatory trust. The use of the word "absolutely" indicates an outright gift to the wife. The precatory words are introduced by "I request" rather than by any word of direction or command, and the clause at the end expressly provides that the "request" shall not be construed in any way as a limitation upon the "use" by the wife of the husband's estate. The effect of the whole as an outright gift is not destroyed by the reference to the "use" by the wife of income and principal "for her proper maintenance and comfort" or by the words "use by my said wife" in the final clause. The language is somewhat loose and may have come nearer to creating a trust than the draftsman intended, but we think that the wife took free of trust. *Hess* v. *Singler*, 114 Mass. 56. *Durant* v. *Smith*, 159 Mass. 229. *Aldrich* v. *Aldrich*, 172 Mass. 101. *Poor* v. *Bradbury*, 196 Mass. 207. *Dexter* v. *Young*, 234 Mass. 588. For similar reasons she took a fee and not merely a life interest.

The decree is to be modified so as to instruct the petitioners that the legatees and devisees under clause "First" of the will are entitled to all property left by the testatrix at her decease which came to her from the estate of her husband, including real estate, tangible property, securities, savings bank deposits and coöperative bank shares, and including the proceeds of such property as had been reinvested by the testatrix, the evidences of which the testatrix at the

time of her death kept in the deposit box that had formerly been her husband's, and as so modified is affirmed. Costs and expenses of this appeal are to be in the discretion of the Probate Court.

*Ordered accordingly.*