FRANK L. WARNER, ADMR. ESTATE OF CORA H. JERRY *v.* BURLINGTON FEDERAL SAVINGS & LOAN ASSN, BISHOP OF THE ROMAN CATHOLIC DIOCESE, CLAIMANT.

May Term, 1946.

Present: MOULTON, C. J., SHERBURNE and STURTEVANT, JJ. and HUGHES, Supr. J.

Opinion filed October 1, 1946.

*Mary C. Arthur* for the defendant.

*Leary & Leddy* for the claimant.

*J. H. Macomber, J. H. Macomber, Jr.,* and *A. Pearley Feen* for the plaintiff.

SHERBURNE, J. In this action the plaintiff seeks to recover the amount deposited by Cora H. Jerry, and the interest thereon, in account No. 90 in the defendant bank. Upon the petition of the defendant, the Bishop of the Roman Catholic Diocese of Burlington, Vermont, was cited in as claimant, under the provisions of P. L. 6725, and said Bishop duly appeared. The issue is the ownership of the account as between the plaintiff and the claimant. Trial was by court, findings of fact were made, and judgment was entered for the plaintiff. The plaintiff and claimant have both filed bills of exceptions.

The findings show the following facts:

Cora Jerry professed the Roman Catholic faith and was a member of the Parish of the Cathedral of the Immaculate Conception in Burlington. From April, 1924, to April, 1940, she was employed as cook at the Rectory of the Cathedral, with the exception of three intervals. She died on January 12, 1944, at the age of 72. She never married. Prior to 1923 she opened account No. 965 in her name in the Burlington Building and Loan Association. The ledger record of this account contains the following entry near the top at the right:

> "Order—June 8, 1923, I wish to leave the money I have in this bank both principal and interest in trust for the Bishop of Roman Catholic Diocese of Burlington, Vermont.
>
> (Signed) Cora H. Jerry
> (Witness) C. S. Brownell"

This entry is in the handwriting of R. A. Cook, for many years

an officer of that Association. This ledger record also contains the following entry in the upper left corner:

> "July 2, 1923, In case of my death please pay to the order of the Bishop of the Diocese of Burlington, Vermont, any funds due me on account of the 5 shares series 36 standing in my name in account number 965.
>
> (Signed) Cora Jerry
> (Witness) Dr. D. A. Shea"

The identity of the writer of this entry is not disclosed. From February 17, 1936, to January 1, 1941, the Burlington Federal Savings and Loan Association was operated as a separate corporation, but in conjunction with the Burlington Building and Loan Association. On January 1, 1941, the latter merged into the former, and the Burlington Federal Savings and Loan Association became the sole operating company. On April 10, 1936, Miss Jerry opened account No. 63 in her own name in the Burlington Federal Savings and Loan Association, and deposited $1400.00 therein. On November 3, 1936, account No. 965 in the Burlington Building and Loan Association matured at $1603.36 and on that date Miss Jerry opened account No. 90 in the Burlington Federal Savings and Loan Association and deposited $1403.36 therein, and $200.00 in account No. 63. On January 6, 1938, she transferred $1600.00, the full amount of account No. 63, to account No. 90. Including the above, 12 deposits were made in account No. 90 and the last deposit on July 2, 1940, brought the account to $5000.00.

Miss Jerry had two more savings accounts, one in the Chittenden County Trust Company, of Burlington, opened March 28, 1933, in the name of "Cora Jerry trustee unto the Bishop of the Roman Catholic Diocese," and one in the Howard National Bank and Trust Company, of Burlington, opened January 2, 1934, in the name of "Miss Cora H. Jerry trustee for the Bishop of the Roman Catholic Diocese of Burlington, Vt." Neither of these accounts ever exceeded $1500.00. From the time account No. 90 in the Burlington Federal Savings and Loan Association was opened until her death Miss Jerry knew that each of her savings accounts was insured up to the amount of $5000.00, and during that period the interest rates were higher in this bank than in the

other Burlington banks. There were no withdrawals from account No. 90 prior to January 6, 1941. From that date to January 3, 1944, there were seven withdrawals of interest only, reducing the amount of the account to exactly $5000.00 each time. In making withdrawals Miss Jerry signed "repurchase applications" either as "Cora Jerry" or "Cora H. Jerry." Six of the withdrawals were paid by checks. The seventh was paid in cash. One check was drawn to the order of the Bishop DeGoesbriand Hospital, Inc., in accordance with a direction written on the corresponding repurchase application, the other five checks were drawn to the order of Cora H. Jerry or Cora Jerry, and were endorsed "Cora H. Jerry" except in the case of the check dated July 1, 1941, which bears the endorsement "Cora H. Jerry Trustee." Except for the check to the order of the said Hospital all withdrawals from account No. 90 were deposited by Miss Jerry either in the savings account in the Chittenden County Trust Company or in the savings account in the Howard National Bank and Trust Company.

Account No. 90 in the defendant bank was opened by Miss Jerry in her own name. She signed "Cora H. Jerry" on the signature card, and that name appears on the bank's ledger card. A pass book was issued to her by the bank, and on its front cover appears the name "Miss Cora H. Jerry" and her address. This pass book was found in the room occupied by Miss Jerry at the time of her death. After her death there was found attached by wire staples to the right hand margin of the ledger card for account 90 a white card 3″ x 5″ bearing the following writing:

"I wish to leave the money in this bank both principal and interest in trust for the Bishop of the Roman Catholic Diocese of Burlington, Vermont.

(Signed) Cora H. Jerry"

The signature on this card is that of Miss Jerry, but the balance of the writing is by a person unknown. This card was attached to the ledger card for some considerable period prior to Miss Jerry's death, but when and under what circumstances is unknown, and the court inferred that it was attached in the regular course of business with Miss Jerry's authority. No notice by delivery of the pass book or otherwise was ever given by or in behalf of Miss

Jerry to the claimant or to any representative of an intent or desire on her part that the claimant have at her decease any interest, legal or equitable, in either account No. 90 or in account No. 965 in the Burlington Building and Loan Association. She made deposits in and withdrawals from these two accounts at will, to the extent that she elected to do so, and without the consent of or notice to the claimant or any representative. Because of exceptions thereto we quote findings 24, 49, 50 and 51:

> "(24) Wherever a place is provided in the books and records of the Burlington Federal Savings and Loan Association for stating the name of the owner of said account number 90, the name of Cora H. Jerry appears as such owner.
>
> "(49) Cora H. Jerry retained sole and complete dominion and control during her lifetime over her investments in said share accounts of the Burlington Building & Loan Association and said Burlington Federal Savings & Loan Association.
>
> "(50) Both Cora H. Jerry and the Burlington Federal Savings and Loan Association recognized and dealt with said account No. 90 as being in the absolute and unconditional ownership of Cora H. Jerry during her lifetime.
>
> "(51) Cora H. Jerry did not intend that any title to or interest in the funds invested by her in shares of the Burlington Federal Savings & Loan Association should pass from her until after her death."

The question at issue is whether the facts recited show that Miss Jerry created a perfect or complete trust for the claimant of account No. 90 in defendant bank. Substantially all of the law necessary for the determination of this question is found in *Pope* v. *Burlington Savings Bank,* 56 Vt 284, 290, 291, 48 Am Rep 781; and *Connecticut River Savings Bank* v. *Albee,* 64 Vt 571, 574, 575, 25 A 487, 488, 33 Am St Rep 944. We quote from the latter case:

> "A completed trust, although voluntary, is valid and may be enforced in equity. It is not essential to

its validity that the beneficiary should have had notice of its creation or have assented to it. The owner and donor of personal property may create a perfect, or complete trust, by his unequivocal declaration in writing or by parol, that he himself holds such property in trust for the purposes named. The trust is equally valid whether he constitutes himself, or another person, the trustee. 'He need not in express terms declare himself trustee but he must do something equivalent to it, and use expressions which have that meaning.' The act creating the trust must be consummated and not rest in mere intention. 'It must appear from written or oral declarations, from the nature of the transaction, the relation of the parties and the purpose of the gift, that the fiduciary relation is completely established.' This is the rule whether the donor makes himself or another person the trustee. If he constitutes himself trustee it is not necessary as between himself and the beneficiary, that he should part with the possession of the trust property. 'If the donor retains the legal title but effectually declares himself a trustee for the donee, thus clothing the donee with the beneficial estate, the gift is valid although voluntary; the donee's rights are perfect and equity will enforce them against the donor, and all persons claiming under him as volunteers.' The trust once created cannot be revoked by the donor, unless the power of revocation is reserved by the donor, when he created it. 'A voluntary· trust which is still executory, incomplete, imperfect or promissory, will neither be enforced nor aided.' 'If the intention is to make such a transfer as would constitute a gift, but the transaction is imperfect for this purpose, the court will not hold the intended transfer to operate as a declaration of trust;' 'for then every imperfect instrument would be made effectual by being converted into a perfect trust.' "

■■ No particular formality of expression is necessary to the creation of an express trust in personal property. It is all a question of intent on the part of the declarant. *Porter* v. *Bank of Rutland,* 19 Vt 410, 419; *O'Brien, Admr.* v. *Holden,* 104 Vt 338, 346, 160 A 192; *Dieter* v. *Scott,* 110 Vt 376, 389, 9 A2d 95. But in case of a declaration of trust, the declaration must be clear and unequivocal that the owner holds the property in trust for the purposes named. *Connecticut River · Savings Bank* v. *Albee, supra; Dieter* v. *Scott, supra.* Where the owner of property purports to create a trust inter vivos but no interest passes to the beneficiary before the death of the settler, the intended trust is a testamentary trust and is invalid, unless the requirements of the statutes relating to the validity of wills are complied with. Rest. Trust, § 56. Thus, where the owner of property declares himself trustee of the property, the intended trust may fail because he does not intend the trust to become effective until his death. Comment H. to above § 56.

Nearly all of the savings deposit trust cases called to our attention deal with situations where the savings account was opened in the name of the depositor in trust for a named beneficiary. Thus in the Albee case, supra, the deposit was made by Samuel Albee in the name of his son, "Charles P. Albee, Samuel Albee, trustee" and the deposit book contained a similar entry. In the instant case the account was opened in the name of Cora H. Jerry and although the white card was at some time attached to the ledger card, the name at the top was never changed, Miss Jerry kept the pass book unchanged and made seven withdrawals of interest in her own name without the addition of any word showing that she considered herself a trustee. The white card uses the language "I wish to leave." Webster's New International Dictionary gives the following definitions of the verb "leave": "1. To allow or cause to remain; to cause to remain, or be followed by, after passing away or cessation; to have remaining at death, hence to bequeath or devise; as, he left a widow; he left a good name; he left a legacy to his niece;" and, as suggested by the claimant, "4. To put, place, deposit, deliver, or the like, so as to allow to remain;—with a sense of withdrawing oneself from; as, leave your hat in the hall; we left our cards." The same authority defines the verb "wish" as "to desire," also "to request; com-

mand; as, I wish you to go now; also propose; as, a question which I wish to raise." The only definition of "wish" that fits the context is "to desire" or "propose." The definition of "request or command" might possibly apply to a testamentary or intervivos gift where it is intended that the beneficiary shall make some particular use of the property given, under the doctrine of precatory trusts, but it does not apply here. No claim is made that the defendant bank is a trustee, or that it is not a mere debtor as to this deposit. It is only claimed that Miss Jerry made herself a trustee. Granting, but not deciding, that the verb "leave" might be interpreted as suggested by the claimant, it might also be interpreted as meaning "to bequeath." Hence, the words "I desire to leave" might be interpreted as meaning "I desire" or "propose to bequeath." It follows that the language used is not clear as required, but is equivocal. The words "in trust" do not clear up the ambiguity. Miss Jerry may have intended that the claimant should take the deposit in trust after her decease. If she did, no valid trust was created, because not in compliance with the statute regarding wills.

Recurring to the other facts and circumstances found, Miss Jerry deposited six of the seven withdrawals in banks where she had made the deposits in her name as trustee for the claimant, and she endorsed one of the checks as trustee This is not inconsistent with a desire to keep control of account No. 90 during her lifetime. She may not have needed this interest to use, while desiring to retain control of the principal against a time of need. The deposits in trust in the Chittenden County Trust Company and the Howard National Bank and Trust Company were made before account No. 90 was opened, so she must have been aware of the method of making a trust deposit there employed yet she did not use it. The notations upon the ledger record of account No. 965 in the Burlington Building and Loan Association are informative in connection with the way Miss Jerry handled the avails thereof. The notation of June 8, 1923, is almost exactly like that on the white card, and the notation of July 2, 1923, less than a month later shows simply an order for payment after her death. When this account was closed, she deposited $200.00 of the avails in account No. 63 standing in her own name in the defendant bank, and

opened account No. 90 therein in her own name and deposited the balance of $1403.36 therein.

Account No. 90 in the defendant bank was opened by Miss Jerry in her own name, and no claim is made that she did not own it absolutely, until such time as the white card was attached. Such ownership is presumed to continue, until the contrary is shown, under the rule that the court will infer that a particular fact continues to exist as long as such a fact usually, as a matter of experience, continues to exist. *Church's Excr.* v. *Church's Estate,* 80 Vt 228, 230, 67 A 549, *Farr, Admr.* v. *Payne,* 40 Vt 615, 617; *Smith* v. *Martin,* 93 Vt 111, 129, 106 A 666; *Merchant's National Bank* v. *Carpenter,* 105 Vt 339, 342, 165 A 909. The burden of proof to establish a completed trust was upon the claimant, and, because the facts at the most only show an equivocal declaration on the part of Miss Jerry, the trial court's conclusions as expressed in findings 24, 49, 50 and 51 were warranted, and the exceptions thereto, and to the denial of claimant's requests to find to the contrary are not sustained.

In view of our disposition of the case it is unnecessary to discuss plaintiff's exceptions.

*Judgment affirmed. Let the claimant pay plaintiff's costs in this Court.*