PAUL H. RIDGE, AS EXECUTOR OF THE ESTATE OF LOTTIE RASCOE McMIL-
LAN IVEY v. VIRGINIA FITCH BRIGHT AND INVESTORS MUTUAL,
INC.

(Filed 26 June, 1956.)

1. **Estates § 17—**

A remainder in personal property after a life estate may be created by
deed or other proper written instrument.  G.S. 39-6.2.

2. **Trusts § 3a—**

The creator and trustee of an *inter vivos* trust may be one and the same
person.

3. **Same—**

It is not required that a completely executed voluntary trust *inter vivos*
be supported by consideration.

4. **Same—**

The settlor-trustee of an *inter vivos* trust in personalty may retain pos-
session of the personalty.

5. **Same—**

An *inter vivos* trust in personalty under which the settlor-trustee retains
the power to revoke the trust, reserves a life interest therein, and also
reserves the power to sell any part of the *res* for her own benefit during
her lifetime, with further provision that the legal title should pass to the
beneficiary upon the death of the settlor, is not an attempted testamentary
disposition of the *res* but is a valid trust, since the instrument transfers an
immediate nonpossessory interest to the beneficiary, subject to divestment
by the settlor.

6. **Same—**

The creator of a revocable *inter vivos* trust in personalty does not revoke
the trust by a will which devises or bequeaths property to the beneficiary
of the trust, since, in the absence of provision in the instrument to the
contrary, the right of revocation must be exercised before the death of
the settlor.

APPEAL by plaintiff from *Hall, J.,* February Term, 1956, of ALA-
MANCE.

This is an action instituted on 3 January 1956 by Paul H. Ridge,
executor of the estate of Lottie Rascoe McMillan Ivey, against the

defendants, for a declaratory judgment to determine whether the capital stock purchased by Lottie Rascoe McMillan (Ivey) of Investors Mutual, Inc. is an asset of her estate or belongs to the defendant, Virginia Fitch Bright, her niece, under the terms of the revocable trust agreement executed by Lottie Rascoe McMillan on 25 October 1949.

Lottie Rascoe McMillan purchased 234.742 shares of the capital stock of Investors Mutual, Inc. on the above date. She thereafter married one Ivey. The certificate No. 157961, representing the above shares of stock, was issued to "Lottie R. McMillan, as trustee for Virginia F. Bright," and was in the safe deposit box of the late Lottie Rascoe McMillan Ivey in the Security National Bank, Burlington, North Carolina, together with her last will and testament, at the time of her death.

The trust agreement referred to above was designated as Exhibit A and made a part of the complaint which reads as follows:

"DECLARATION OF TRUST-REVOCABLE. I, the undersigned, having purchased or declared my intention to purchase certain shares of capital stock of Investors Mutual, Inc. (the Company), and having directed that the certificate for said stock be issued in my name as trustee for Mrs. Virginia F. Bright, as beneficiary, whose address is 703 Wicker St., Greensboro, N. C., under this Declaration of Trust, Do HEREBY DECLARE that the terms and conditions upon which I shall hold said stock in trust and any additional stock resulting from reinvestment of cash dividends upon such original or additional shares are as follows:

"(1) During my lifetime all cash dividends are to be paid to me individually for my own personal account and use; provided, however, that any such additional stock purchased under an authorized reinvestment of cash dividends shall become a part of and subject to this trust.

"(2) Upon my death the title to any stock subject hereto and the right to any subsequent payments or distributions shall be vested absolutely in the beneficiary. The record date for the payment of dividends, rather than the date of declaration of the dividend, shall, with reference to my death, determine whether any particular dividend shall be payable to my estate or to the beneficiary.

"(3) During my lifetime I reserve the right, as trustee, to vote, sell, ·redeem, exchange or otherwise deal in or with the stock subject hereto, but upon any sale or redemption of said stock or any part thereof, the trust hereby declared shall terminate as to the stock sold or redeemed, and I shall be entitled to retain the proceeds of sale or redemption for my own personal account and use.

"(4) I reserve the right at any time to change the beneficiary or revoke this trust, but it is understood that no change of beneficiary and no revocation of this trust except by death of the beneficiary, shall

be effective as to the Company for any purpose unless and until written notice thereof in such form as the Company shall prescribe is delivered to the Company at Minneapolis, Minnesota. The decease of the beneficiary before my death shall operate as a revocation of this trust.

"(5) In the event this trust shall be revoked or otherwise terminated, said stock and all rights and privileges thereunder shall belong to and be exercised by me in my individual capacity.

"(6) The Company shall not be liable for the validity or existence of any trust created by me, and any payment or other consideration made or given by the Company to me as trustee or otherwise, in connection with said stock or any cash dividends thereon, or in the event of my death prior to revocation, to the beneficiary, shall to the extent of such payment fully release and discharge the Company from liability with respect to said stock or any cash dividends thereon. Dated Oct. 25, 1949. LOTTIE R. McMILLAN"

The last will and testament of the testatrix was designated as Exhibit B and made a part of the complaint. The testatrix, after devising her home in Burlington, together with its contents, to Virginia Walker Oakley, made five specific bequests in money aggregating $5,900.00, and gave her automobile to her niece, Virginia Fitch Bright. She then devised and bequeathed all the rest and residue of her property to six named individuals, Virginia Fitch Bright being one of them.

This cause was heard by consent by the trial judge, without a jury, upon the pleadings, including the attached exhibits and an agreed statement of facts. In the statement of facts, among other things, we find, "6. At no time prior to the death of Lottie Rascoe McMillan Ivey did she change the beneficiary, withdraw any of the trust property, sell, redeem, exchange or otherwise deal with the trust property (except to receive all cash dividends paid and possibly exercise voting rights), or revoke or otherwise terminate the 'Declaration of Trust-Revocable' unless the execution of her last will and testament on July 29, 1955, constitutes a revocation.

"11. That there are approximately 2,800 owners of capital stock in the defendant Investors Mutual, Inc. within the State of North Carolina, and which shareholders in said Investors Mutual, Inc. own shares in said Company in the approximate value of $12,000,000; that approximately 60% of the number of shareholders of Investors Mutual, Inc. within the State of North Carolina and approximately 60% of the dollar value of shares in Investors Mutual, Inc. owned by North Carolina stockholders are subject to provisions identical to those set forth in the 'Declaration of Trust-Revocable' in this cause. This identical form of Declaration of Trust involved in this action has been in use by Investors Mutual, Inc. in North Carolina and in the United States since shortly after 1940 when the Company was organized."

The trial judge being of the opinion that a valid *inter vivos* trust in the 234.742 shares of capital stock of Investors Mutual, Inc. purchased by Lottie R. McMillan was created by the terms of which the beneficiary, Virginia F. Bright, is now entitled to all the right, title and interest in and to said capital stock, and the trial judge being of the further opinion that no revocation of said trust occurred, entered judgment accordingly.

The plaintiff appeals, assigning error.

*Long, Ridge, Harris & Walker for appellant.*

*Sanders & Holt for appellee, Virginia F. Bright.*

*Brooks, McLendon, Brim & Holderness for appellee, Investors Mutual, Inc.*

*By: Hubert F. Humphrey.*

DENNY, J. It is not contended that the instrument under consideration was executed in the manner required by law so as to be valid as a testamentary disposition of the shares of stock involved. Consequently, the question to be determined is whether the instrument created a valid *inter vivios* trust which entitled Virginia Fitch Bright to the stock upon the death of the settlor-trustee, Lottie Rascoe McMillan Ivey. However, in making this determination we must consider (1) whether upon the execution of the so-called trust instrument, the defendant, Virginia Fitch Bright, acquired an interest in the subject matter of the trust; or (2) whether the settlor retained such control over the subject matter of the trust as to render it invalid as a trust but only an attempted testamentary disposition.

The appellant contends that the instrument under consideration is invalid because under our decisions, *Speight v. Speight*, 208 N.C. 132, 179 S.E. 461; *Nixon v. Nixon*, 215 N.C. 377, 1 S.E. 2d 828, and *Woodard v. Clark*, 236 N.C. 190, 72 S.E. 2d 433, a limitation over, after a life estate, in personal property is void. While we do not concede that these cases are controlling on the facts in this case, it is well to note that the restriction upon the right to create a remainder in personal property after a life estate by deed, or other written instrument, has been eliminated by Section 1, Chapter 198 of the Session Laws of 1953, codified as G.S. 39-6.2, which reads as follows: "Any interest or estate in personal property which may be created by a last will and testament may also be created by a written instrument of transfer."

In creating an *inter vivos* trust, the creator and the trustee may be one and the same person. Bogert on Trusts and Trustees, Volume 1, section 41, page 270; Scott on Trusts, Volume 1, section 18, page 143; Restatement of the Law on Trusts, Volume 1, section 18, page 68; 90 C.J.S., Trusts, section 210(b), page 137; 54 Am. Jur., section 116, page

101. Likewise, in creating a trust *inter vivos*, "where there is a completely executed voluntary contract to establish a trust and nothing further remains to be done by the grantor to transfer the title, the relation of trustee and *cestui que trust* is established and the equitable rights growing out of such conveyance in trust, although made without consideration, will be recognized and enforced, since it is considered as an executed gift, needing no other consideration." 89 C.J.S., Trusts, section 28, page 746, *et seq.* "Consideration is not necessary to the creation of a trust, or, in other words, consideration is not necessary to a trust that is executed in the sense of being perfectly created, whether by declaration or transfer." 54 Am. Jur., Trusts, section 41, page 51, *et seq.*

In Bogert on Trusts and Trustees, Volume 1-A, section 202, page 254, *et seq.*, it is said: "The modern law is clearly to the effect that the existence of consideration is not necessary to the establishment of a trust, either by the transfer to a trustee of real or personal property, or by way of declaration of a trust of real or personal property. In order that the trust be enforceable, it is not necessary that there be any transaction which would amount to the giving of consideration if the trustee were treated as a promissor under a contract. It is not an essential feature of the trust creation that the settlor has received a benefit from the trustee, *cestui*, or another, or that benefits have moved from the settlor, *cestui*, or another, to the trustee. . . . If the settlor has otherwise effectively completed the trust, the fact that he has received nothing in return for the transfer of the equitable or legal and equitable property interest is immaterial. . . ."

Moreover, when the owner of personal property, in creating a trust therein, constitutes himself as trustee, it is not necessary as between himself and the beneficiary that he should part with the possession of the property. *Warner v. Burlington Fed. Sav. & L. Asso.*, 114 Vt. 463, 49 A. 2d 93, 168 A.L.R. 1265; *Cohen v. Newton Savings Bank*, 320 Mass. 90, 67 N.E. 2d 748, 168 A.L.R. 1321.

As to the reservation of the power to revoke or modify a trust, the general rule in this respect is stated in section 57.1, Scott on Trusts, Volume 1, page 336, *et seq.*, as follows: "It is well settled that the reservation by the settlor of a power to revoke the trust does not of itself make the trust testamentary. It is also settled . . . that the reservation by the settlor of a life interest does not make the trust testamentary. Does the reservation of a life interest together with a power of revocation have any greater effect? It seems clear that it does not. If the owner of property transfers it in trust to pay the income to the settlor for life and on his death to pay the principal to others, the settlor reserving also power to revoke the trust at any time as long as he lives,

it is held that the trust is not testamentary." The foregoing view is supported by almost countless decisions, among them we cite: *Becker v. St. Louis Union T. Co.*, 296 U.S. 48, 80 L. Ed. 35; *United B. & L. Asso. v. Garrett*, 64 F. Supp. 460; *Cleveland Trust Co. v. White*, 58 Ohio App. 339, 16 N.E. 2d 588, aff. 134 Ohio St. 1, 15 N.E. 2d 627, 118 A.L.R. 475; *Cohen v. Newton Savings Bank, supra; National Shawmut Bank of Boston v. Joy*, 315 Mass. 457, 53 N.E. 2d 113; *Farkas, Adm'r. v. Williams and Investors Mutual, Inc.*, 5 Ill. 2d 417, 125 N.E. 2d 600; *Pinckney v. City Bank Farmers Trust Co.*, 249 App. Div. 375, 292 N.Y.S. 835; *In re Sheasley's Trust*, 366 Pa. 316, 77 A. 2d 448; *In re Shapley's Trust*, 353 Pa. 499, 46 A. 2d 227, 164 A.L.R. 877; *Goodrich v. City National Bank*, 270 Mich. 222, 258 N.W. 253; *In re Brunswick's Estate*, 143 Misc. Rep. 573, 256 N.Y.S. 879; *Witherington v. Herring*, 140 N.C. 495, 53 S.E. 303; Anno.: 32 A.L.R. 2d 1270, *et seq.*

In the last cited case, *Clark, C. J.*, said: "A power of revocation may, however, be reserved and is perfectly consistent with the creation of a valid trust. If never exercised during the lifetime of the donor and according to the terms in which it is reserved, the validity of the trust remains unaffected. 28 Am. and Eng. Enc. (2 Ed.), 900, 950; *Stone v. Hackett*, 78 Mass. 227; *Kelley v. Snow*, 185 Mass. 288; 1 Beach Trusts, sec. 81, and cases cited." *Waldroop v. Waldroop*, 179 N.C. 674, 103 S.E. 381; *Shannonhouse v. Wolfe*, 191 N.C. 769, 133 S.E. 93; *King v. Richardson* (4th C.C.A.), 136 F. 2d 849.

Also in the case of *Farkas, Adm'r. v. Williams and Investors Mutual, Inc., supra,* the Supreme Court of Illinois held the identical declaration of trust which is involved in this appeal, to be a valid *inter vivos* trust.

It is further said in the above cited section in Scott on Trusts, that "It is immaterial whether the settlor reserves simply a power to revoke the whole trust at one time or whether he reserves also a power to revoke the trust as to any part of the property from time to time." *Bear v. Millikin Trust Co.*, 336 Ill. 366, 168 N.E. 349, 73 A.L.R. 173; *Jones v. Old Colony Trust Co.*, 251 Mass. 309, 146 N.E. 716; *Goodrich v. City Nat. Bank & Trust Co., supra; Leahy v. Old Colony Trust Co.,* 326 Mass. 49, 93 N.E. 2d 238, 18 A.L.R. 2d 1006.

It seems to be the generally accepted view, however, that where the settlor or creator purportedly transfers property in trust, and reserves not only a life estate therein but also the power to control the trustee as to the details of the administration of the trust, the purported trustee is a mere agent of settlor and there is no valid *inter vivos* trust, and the disposition in so far as it is intended to take effect after his death, is testamentary and is invalid unless the requirements of the statutes relating to the execution of wills are complied with. Re statement of the Law on Trusts, Volume 1, section 57(2), page 175; *Application of*

*Cerchia*, 279 App. Div. 734, 108 N.Y.S. 2d 753; *In re Tunnell's Estate*, 325 Pa. 554, 190 A. 906; *Burns v. Turnbull*, 266 App. Div. 779, 41 N.Y.S. 2d 448; *Atlantic Nat. Bank v. St. Louis Union Trust Co.*, 357 Mo. 770, 211 S.W. 2d 2.

The appellant insists that the case of *Application of Cerchia, supra,* is on all fours with the case under consideration. We do not so construe it. While the opinion does not contain a copy of the writing interpreted by the New York Court, the Court does state, "The writing relied upon as creating a trust of the securities does not accomplish that purpose. It manifests no intention on the part of the settlor to impose any enforceable duties upon himself as trustee. In the absence of such an intention no trust is created. Restatement, Trusts, Sec. 25." We interpret section 25 of the Restatement of the Law on Trusts, Volume 1, page 76, *et seq.*, which is the only authority cited in the opinion, to mean that mere precatory words, generally speaking, are not sufficient to manifest an intention to create a trust.

There can be no doubt about the intention of the settlor, Lottie R. McMillan, to create a trust with her niece Mrs. Virginia F. Bright as the beneficiary thereof. She caused the certificate representing the stock to be issued by the defendant corporation, Investors Mutual, Inc. to herself as trustee for the named beneficiary. She then declared the terms and conditions upon which she would hold the stock and any additional stock resulting from reinvestment of cash dividends upon such original or additional shares. The terms and conditions do not provide for her to hold title to the securities individually as settlor, but as trustee. *Farkas, Adm'r. v. Williams and Investors Mutual, Inc., supra.* We think this trust instrument, when rightly construed, means (1) that during her lifetime as trustee she was to pay to herself individually, for her own personal account and use, the cash dividends paid on the stock. However, if she, as trustee, purchased additional stock by reinvesting the cash dividends, such stock was to become a part of the principal of the trust and subject to its terms; (2) that upon her death, the legal title to all stock held in the trust was to pass to the beneficiary; (3) that during her lifetime she reserved to herself not individually but as trustee, the right to vote, sell, redeem, exchange, or otherwise deal in or with the stock subject to the trust, and upon the sale or redemption of such stock or any part thereof, the trust was to terminate as to the stock sold or redeemed—that is, such stock was to be free of the trust and she was to have the right to retain the proceeds from the sale or redemption thereof for her own personal or individual account or use; and (4) the settlor reserved the right to change the beneficiary or revoke the trust. But no change of the beneficiary or revocation of the trust, except the death of the beneficiary before the

death of the settlor, was to be effective as to the Company for any purpose unless or until written notice thereof in such form as the Company might prescribe was delivered to the Company at its Minneapolis office.

It is stipulated that the settlor never changed the beneficiary, withdrew, sold, redeemed, exchanged or otherwise dealt with the trust property (except to receive and use the cash dividends paid on the stock and possibly exercise voting rights), or revoke or otherwise terminate the trust unless the execution of her last will and testament constitutes a revocation.

The fact that the legal title to the stock held in trust was not to pass to the beneficiary until the death of the settlor, did not make the instrument testamentary. The view generally accepted with respect to such reservations as those outlined above is stated by Bogert on Trusts and Trustees, with numerous supporting authorities, in Volume 1, section 103, page 481, *et seq.* as follows: "The grantor frequently provides that he shall be entitled to possession of the *res* for his life, or shall be a life beneficiary of the trust created, and reap the profits through the trust. Neither of these clauses shows an intended will. While they express desire that the ultimate *cestuis* shall not possess and enjoy until after the death of the grantor, they do not exclude the immediate transfer of a nonpossessory interest.

"Neither the reservation of a power to revoke the trust and take back the *res,* nor the retention of a power to modify the trust and change the beneficiaries, makes the document testamentary (citing among other cases *Thompson v. McDonald,* 22 N.C. 463). These clauses are held to show merely that the present interest passing to the *cestuis* is subject to divestment at the hands of the grantor. They do not prove that no interest passes immediately to the *cestuis.*

"A trust is not made testamentary by the coupling together of a life interest in the settlor and a power in him to revoke or by the joinder to these two factors of the power to alter the trust."

We concede that in a trust where the settlor is also the trustee, it is difficult to determine whether the trustee is acting as an individual or as trustee in determining when to sell or redeem the stock held in the trust or any part thereof. Even so, if it be conceded that the settlor and not the trustee was the movant in causing the exercise of such power, had the power been exercised, such action would not represent any greater reservation of power in the settlor than the unqualified power to revoke the trust. *Cramer v. Hartford-Conn. Trust Co.,* 110 Conn. 22, 147 A. 139, 73 A.L.R. 201; *Wilson v. Fulton Nat. Bank,* 188 Ga. 691, 4 S.E. 2d 660; *Bear v. Millikin Trust Co., supra; Jones v. Old Colony Trust Co., supra; In re Shapley's Trust, supra; National Shaw-*

*mut Bank of Boston v. Joy, supra.* And, as heretofore pointed out, such latter reservation is not fatal to an *inter vivos* trust.

The facts in the case of *Wescott v. Bank,* 227 N.C. 39, 40 S.E. 2d 461, cited by the appellant, are distinguishable from those in the instant case. There, this Court held, and properly so, that "there was no evidence of a transfer or assignment of a present beneficial interest in the fund deposited in the defendant Bank."

It is further contended that the last will and testament of Lottie Rascoe McMillan Ivey revoked the trust involved herein. We do not concur in this view. In the absence of the reserved right to revoke an *inter vivos* trust by will, the mere fact that the settlor makes a will and devises or bequeaths property to the beneficiary of the trust, the will does not revoke the trust. A will does not become effective until death, while ordinarily the power to revoke a trust, unless the trust instrument provides otherwise, must be exercised before the death of the settlor. *Witherington v. Herring, supra; Leahy v. Old Colony Trust Co., supra; Gray v. McCausland,* 314 Mass. 743, 51 N.E. 2d 441, 149 A.L.R. 1059; *National Shawmut Bank of Boston v. Joy, supra; Brown v. International Trust Co.,* 130 Colo. 543, 278 P. 2d 581; *In re Lyon's Estate,* 164 Pa. Super. 140, 63 A. 2d 415; *Mayer v. Tucker,* 102 N. J. Eq. 524, 141 A. 799.

We hold the instrument under consideration created a valid *inter vivos* trust, and upon the death of the settlor the 234.742 shares of the capital stock of Investors Mutual, Inc., became the absolute property of the beneficiary, Mrs. Virginia F. Bright, she being one and the same person as the defendant Virginia Fitch Bright.

The judgment of the court below is

Affirmed.