BANK OF MANHATTAN TRUST CO., *Ex. vs.* AUSTEN GRAY *et al.*

JUNE 23, 1933.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

RATHBUN, J. This bill is brought by the executor of the will of Grace Townsend Gray, deceased, late of the city of Newport, for construction of said instrument and for instructions as to the duties of the executor. The cause, being ready for hearing for final decree, was certified to this court pursuant to the provisions of Sec. 35, Chap. 339, G. L. 1923. One phase of the cause involves the question of ownership of certain articles of silverware stored in the vaults of the Aquidneck National Exchange Bank and Savings Company of Newport. After a full hearing, the Superior Court entered a decree declaring that said silverware was the property of respondent Austen Gray by reason of a gift *inter vivos* made to him by his mother, the testatrix. The guardian of persons not of full age and of persons not ascertainable and not in being appealed from said decree, and this appeal is before us as a part of the main cause.

The questions presented involve the second and third clauses of the will. The second clause is as follows: "All my estate, real and personal, and wherever situated, I give, devise and bequeath to my trustee hereinafter named, in three separate and distinct parts, one of which shall comprise two-thirds of my estate, and the other two shall each comprise one-half of one-third, in trust, for the purposes following: . . ." The above clause is followed by language establishing separate trusts for life for three individuals with gifts over. The next clause is the third, which is as follows: "All the rest, residue and remainder of my estate, including any legacies or devises which may lapse or may fail for any reason to take effect, I give, devise and bequeath to my said son Austen Gray."

The bill alleges that at the time of her death the testatrix had certain tangible personal property valued at $20,945. The inventory shows that said property consists of the silverware in question, which is valued at $4,544, jewelry located in the vaults of the Lincoln Safe Deposit Company of New York and valued at $13,213, and personal effects and furniture stored in the warehouse of the Lincoln Ware-

house Corporation in New York and valued at $3,188. The bill further alleges that Austen Gray has made a claim to all said tangible personal property.

The basis of this claim is the contention that there is an apparent conflict between the language of the second and third clauses of the will and that there is therefore an ambiguity with regard to the construction of the will. His answer alleges: "that at the time of the death of the testatrix certain envelopes, letters, memoranda and lists in the handwriting of the testatrix and referring to the afore-mentioned tangible personal property were found in the safe deposit box of the Lincoln Safe Deposit Company at New York City, stating that she had distributed or desired to distribute the said tangible personal property to this respondent and to the other members of her family and friends, all of which envelopes, letters, memoranda and lists are in the possession of the complainant." The answer further alleges that said silverware is "the property of this respondent and is no part of the assets of the estate of said testatrix."

We will first consider whether the silverware is a part of the assets of the estate. Did the testatrix make a valid gift *inter vivos* of the silverware to Austen Gray?

The claim of respondent Gray to the silverware is based on a letter received from his mother, the testatrix, on July 18, 1920, and upon subsequent conversations. The letter is as follows:

> "My dear Austen: There are three boxes of silver and one oak box in the Aquidneck Bank of Newport of which this is the key. The silver is for the children. Affectionately, Ma. Or for your use in case you need it."

The key was not a key to a deposit box but one which fitted the locks on the boxes in which the silver was packed. The silver was originally stored in the name of testatrix and that of her attorney. Later the receipt was changed by

inserting respondent's name in lieu of that of the attorney. On two occasions Gray took articles of silver from these boxes in the vault, and it does not seem to be questioned that he had the permission of his mother to take out the silver for use at any time he desired. He testified as follows as to conversations with his mother. Q. "No, I just want you to tell at this time how did she refer to that silver when she spoke of it?" A. "As if it was mine and I could have any part of it when I might need it." Q. "Did your mother also have control?" A. "Oh, yes. I had access to the silver and I could have got it if I wanted any more; if she was in Europe or out of Newport, I could have got it."

From the date of said letter until her death—a period of more than ten years—testatrix continued to pay the storage charges and exercised a joint control with said respondent. The language of the letter does not indicate a gift—at least not to the son—but, rather, confers a right to use the silver. Respondent Gray never took possession thereof, and considering all the circumstances we are of the opinion that the delivery of a key does not constitute symbolic delivery and that said respondent has not maintained the burden of proving a gift.

In 28 C. J. 634, 635, the rule is stated as follows: "In order to constitute an effectual delivery the donor must not only have parted with the possession of the property, but he must also have relinquished to the donee all present and future dominion and control over it, beyond any power on his part to recall. The surrender must be so full and complete that, if the donor resumes control over the property without the consent of the donee, he will be answerable in damages as a trespasser. The retaining of control in the hands of the donor over the subject of the gift, or the reservation by the donor of any right to retake the property or appropriate it to other purposes, avoids the gift." We must conclude that the silverware is a part of the assets of the estate.

The next question is whether all of said intangible personal property described in the bill—including the silverware—passed under the second clause of the will to the trustee or under the third clause to respondent Gray. The sole question is whether the language of the second clause is broad enough to carry the entire estate. The language is: "All my estate, real and personal, and wherever situated, I give, devise and bequeath to my trustee hereinafter named." The language could hardly be more inclusive.

It is contended by the adult respondents that the language f the third clause is inconsistent with that of the second nd that therefore the will is ambiguous. We find no inconsistency or ambiguity therein. Said respondents introduced in the Superior Court certain evidence by which they hoped to show that it was not the intention of the testatrix that the articles of personal property described in the will pass to the trustee; and that it was her intention that this non-income-producing property pass to respondent Gray in trust to be distributed according to the directions which she had given him. This testimony shows nothing more than an attempt on the part of testatrix to make testamentary disposition of property without complying with the Statute of Wills. By the second clause testatrix gave all her property to the trustee in trust. It is obvious that the purpose of the third clause was to give to her son any legacies which might lapse or fail.

Even if the clauses of the will were inconsistent, as said respondents contend, the evidence relied upon was inadmissible for the purpose offered. Testimony cannot be admitted to contradict, vary or alter the language of a will. *Jenison* v. *Jenison*, 51 R. I. 388. In *Lewis* v. *Douglass*, 14 R. I. at p. 607, this court said: "The ambiguity sought to be aided by the testimony offered was not, as the plaintiff's counsel supposes, a latent ambiguity, that is, one arising upon the evidence, in aid of which extrinsic evidence is admissible, as, for instance, where it appears that there are two persons or estates, both answering equally the descrip-

tion in the will, and the question is whom or which the testator intended, but was an ambiguity arising from the apparent conflict of the provisions of the will itself, and was, therefore, a patent ambiguity, or one appearing on the face of the instrument. Such an ambiguity is to be removed, if at all, by construction and not by averment. To permit parol evidence to be given in aid of such an ambiguity would not only be in violation of the well settled rule that the testator's intent is to be ascertained by the will itself, but would also be contrary to the statute, which requires wills to be in writing. The declarations or instructions of the testator to the witnesses were, therefore, inadmissible for the purpose of showing what the testator meant by the provision of the will, and were properly excluded."

The appeal of the guardian *ad litem* is sustained and the decree appealed from is reversed.

Our conclusions are that all of the personal property listed and set forth in Exhibit D, attached to the bill, passed by the second clause of the will to the trustee; and that it is the duty of the executor to transfer and deliver all of said personal property to the trustee, and the complainant is advised accordingly.

*Cornelius C. Moore, Sheffield & Harvey, William R. Harvey, J. Russell Haire,* for complainants.

*Jeremiah P. Mahoney,* Guardian *ad litem.*

*William MacLeod,* for respondents.