### Cody Chevrolet, Inc. v. Philip Royer et al

[189 A.2d 554]

January Term, 1963

Present: Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.

Opinion Filed March 6, 1963

*Theriault & Joslin* (*John A. Burgess* on the brief) for the plaintiff.

*Andrew G. Pepin* for the defendants.

**Smith, J.** The plaintiff brought a civil action against the defendants to recover upon a check for $2,000.00 drawn by the defendant, Mrs. Royer, to the order of Cody Chevrolet, Inc., which check was directed to the Central Savings Bank of Orleans, Vermont, but payment upon which was stopped by order of the defendants so that it has not been paid.

The defense of the defendants was that the check in question had been turned over to the plaintiffs through the mistake of Mrs. Royer and contrary to the terms of an agreement between the parties relative

to the purchase of a new Chevrolet truck by the defendants from the plaintiff.

The case below was heard by court and judgment was given for the plaintiff in the amount of $800.00. The case is here upon plaintiff's appeal from the judgment and is here briefed entirely upon exceptions to certain of the findings of fact made by the lower court.

A better understanding of the questions presented below for determination, as well as the situation between the parties, and the questions presented here can be had by a summary of the findings of fact, unexcepted to, which were made by the lower court.

The defendants, Mr. and Mrs. Royer, were the owners of a Ford truck, bought new in the spring of 1960. This truck was damaged in a collision on December 10, 1960. On December 15, 1960 Mrs. Royer, together with one Rio Damarais, an employee and agent of the defendants, went to the Cody garage in Newport, Vt. At the Cody garage they talked with a Mr. Kilburn, an employee and salesman for plaintiff corporation. Mr. Damarais talked with Mr. Kilburn about the possibility of the Royers buying a Chevrolet truck from the plaintiff, and told him of the damaged Ford truck, which was at Barre. Mr. Kilburn then went to Barre, viewed the damaged Ford truck and returned to Newport in time to have further conversation with Mrs. Royer and Mr. Damarais in the afternoon of the same day.

At this time, Mr. Kilburn wrote on both a yellow sheet of paper and white card the terms of a proposed sale or trade of a new Chevrolet truck by the plaintiff for the damaged Ford truck and a cash payment from the defendants. The terms expressed were a sale figure of $3,400.00 for the new Chevrolet truck, for which the defendants were to give the damaged Ford truck and a cash payment of $2,200.00.

At this time, Mr. Royer was in New York on business and Mrs. Royer, upon returning home, contacted him by telephone relative to the offer from the plaintiff. As a result of this phone conversation with Mr. Royer, on December 16th Mr. Damarais telephoned Mr. Kilburn that Mr. Royer would enter into the sale and trade only if the cash payment was reduced to $2,000.00  Later in that day, Mr. Kilburn telephoned back to Mr. Damarais and stated that the plaintiff would accept the terms of the damaged Ford truck and $2,000.00. Included in the agreement was that the plaintiff would remove the

body from the damaged Ford truck and affix it to the new Chevrolet.

While the Royers had notified the Farm Bureau Insurance Company, the insurance carrier on the Ford truck, of the damage to it, there had been no settlement figure agreed upon between the insurance company and the Royers for the loss, nor had this been a matter of discussion between Mrs. Royer, Damarais and Kilburn in their conversations relative to the buying of the Chevrolet truck.

On the afternoon of December 19, Mrs. Royer and Damarais went to the Cody garage to pay for and obtain the new truck. She was informed by Mr. Kilburn that she should go to the insurance office and sign some papers relating to insurance. The papers she signed were release papers settling the collision claim and she was handed a check for $1,200.00 in adjustment of the collision loss. Mrs. Royer and Damarais then returned to Mr. Kilburn's office and she gave Kilburn the insurance check for $1,200.00, after endorsing it, and also her own check for $2,000.00. The check for $1,200.00 was negotiated and cashed by the plaintiff, but Mr. Royer stopped payment on the $2,000.00 check and the plaintiff was unable to cash it.

This brings us to the heart of the controversy between the parties, and to those findings of fact to which the plaintiff has briefed its exceptions.

The plaintiff claims that the trade between the parties included not only the damaged Ford truck, and the $2,000.00 cash payment to be given by the defendant for plaintiff's Chevrolet truck, but the proceeds that would otherwise go to the defendants from a settlement with their insurance carrier on the collision coverage on the damaged Ford truck.

The defendants asserted in their answer that the sale and trade between the parties was the damaged Ford truck, plus a cash payment of $2,000.00 for the new Chevrolet truck, and that Mrs. Royer's act in turning over both the $1,200.00 check and the $2,000.00 check was a mistake and based upon her business ignorance. It is defendants' contention that the plaintiff was not entitled to retain the $2,000.00 check, in addition to the $1,200.00 already received by it through its cashing of the collision settlement check from the insurance company. The answer also alleged that the plaintiff was entitled to only $800.00 over and above the $1,200.00 already received

by it from the defendants, and that such sum had been tendered to it by the defendants but was refused.

In considering the plaintiff's exception to certain of the findings of fact made by the court below we are guided by certain well-defined and long-established rules.

"On an appeal to this Court for a review of findings on exceptions thereto . . . we do not weigh the evidence as to its persuasive effect, and the credibility of the witnesses are for the trier of the facts to determine. A finding must stand if supported by any substantial evidence, although there may be inconsistencies, or even substantial evidence to the contrary. We must read the evidence in support of the findings, if reasonably possible, when considered as a whole." *In re Petition of Bolduc,* 121 Vt. 20, 22, 146 A.2d 240; *New England Road Machinery Co.* v. *Calkins,* 121 Vt. 118, 120, 149 A.2d 734.

Plaintiff's first exception is to finding No. 17.

"It was by mistake and as a result of ignorance of the terms of the trade that Mrs. Royer gave Mr. Kilburn both a check for $2,000.00 and the said $1,200.00 insurance check."

The testimony of Mrs. Royer was that when she went to the Farm Bureau Insurance office, at the direction of Mr. Kilburn, she thought that the purpose of her visit was to take out insurance on the new truck that was about to be bought. The undisputed evidence was that, prior to this visit to the insurance office, Mrs. Royer had not discussed a settlement figure with the insurance company on the damaged Ford truck, nor did she have any knowledge that the purpose of her visit to the insurance company office on this occasion was to receive the check in question.

The court found that it was Mr. Damarais who conducted the conversation with Mr. Kilburn about the purchase of the Chevrolet truck. No exception was taken to this finding. Mrs. Royer testified, when asked on cross-examination her reason for turning both checks over to Mr. Kilburn, "I didn't know what to do. I never did business in my life."

There is ample evidentiary support for the finding in the record and plaintiff takes nothing by its exception.

Plaintiff's next exception is to finding No. 18.

"At no time from the time the said Ford truck was damaged to the time of hearing in this cause had either of the defendants or any agent or servant in their behalf, talked with the Farm Bureau Insurance Company about a settlement of their collision claim."

There is ample evidence in the case to this effect, nor, despite plaintiff's assertions in its brief, do we find any evidence to the contrary. Plaintiff takes nothing by its exception.

The next exception briefed is to finding No. 19.

"During the period of time referred to in Paragraph 18 the only one who talked with the Farm Bureau Mutual Insurance Company about adjusting the collision loss was Mr. Kilburn and this was not done until the morning of December 19."

What we have already stated as to the evidence on finding No. 18 applies equally to this exception, and the same ruling must follow.

Finding No. 20, also excepted to by the plaintiff, has to do with a sheet of paper, titled "Retail Order for a Motor Vehicle" signed by the parties and entered as an exhibit in the case by the defendants.

"(20) The yellow sheet, referred to in this case as Defendants' Exhibit C, was prepared by Mr. Kilburn before Mrs. Royer arrived at his office on December 19th and the words 'Draft on collision insurance Farm Bureau Mutual Ins. Co. 26 State St. Montpelier, Vt.' were written in the lower right hand corner of the same by him after Mrs. Royer gave him the two checks."

It is the claim of the plaintiff that the only evidence as to the writing relating to the draft on the insurance company came from the testimony of Mrs. Royer, and that it resulted in an oral alteration of a bill of sale that was not ambiguous on its face.

However, the lower court had already found in Nos. 10 and 11 of the findings that the agreement between the parties was that the plaintiff would trade the Chevrolet truck to the defendants for $2,000.00 and their damaged Ford truck. At the time that Mrs. Royer testified the remarks were added to Def.'s C, the retail order blank, the checks had been passed, and the sale presumably consummated. The evidence was also clear that, with the exception of the remarks relative to the draft on the collision insurance, Def.'s C contained the same terms of agreement between the parties as the court has previously

found in findings 10 and 11. The weight to be given the testimony of Mrs. Royer was for the determination of the lower court. No error is found.

Finding No. 23: "Defendants' Exhibit C sets forth the terms of the trade between the parties hereto, that the defendants were to pay the sum of $2,000.00 in cash and turn over to the plaintiff in trade defendants' damaged 1960 Ford truck, is also excepted to by the plaintiff. However, plaintiff admits that its exceptions are based upon the same arguments just advanced in its exception to No. 20." With this we agree and it must follow that plaintiff takes nothing by its exception.

The last exception taken by the plaintiff is to finding No. 26: "Promptly after defendant, Philip Royer, stopped payment on the said $2,000.00 check he offered to pay plaintiff the said $800.00 balance due, and plaintiff refused to accept the same."

It is true, as plaintiff has alleged, that no evidence appears in the record of the case to this effect, although the defendants claimed to have made such an offer in their answer. Finding No. 26, therefore, is in error, it being without evidentiary foundation.

Such error, however, does not require a reversal and remand, but only an amendment of the judgment order below to allow the plaintiff interest on the sum of $800.00 as well as its costs.

In nearly all of the exceptions which we have just considered the plaintiff has sought to point out evidence in the record before us which conflicted with the evidence in the case upon which the findings were made by the court below. What was sought in reality was a determination from this Court as to the weight which the trial court should have given the evidence below, as well as a review of the credibility given to the various witnesses. But, as we have often said, these are not for our consideration, and are not a basis upon which an appeal to this tribunal should be taken. We would again emphasize that the weight of the testimony and the credibility of the witnesses are solely for the determination of the trier of facts, and cannot be reviewed here.

The judgment in the case being supported by the finding, the entry is: *Judgment affirmed, and cause remanded for assessment of interest and costs.*