## Esme Little v. Russell Little et al

[ 200 A.2d 276 ]

February Term, 1964

Present: Holden, C. J., Shangraw, Barney and Smith, JJ. and Daley, Supr. J.

Opinion Filed April 7, 1964   .

*Samuel W. Fishman, Francis D. Foley* and *Joseph C. McNeil* for the plaintiff.

*Omer L. Moreau* for the defendants.

**Smith, J.** This is an appeal from a decree of the Addison County Court of Chancery dismissing the bill of complaint brought by the plaintiff, and decreeing to the defendants funds on deposit in the Burlington Savings Bank represented by a joint account in the names of the defendants and one Fred C. Little, deceased.

Plaintiff, by her bill of complaint, sought to enforce a claimed trust relative to the deposit in the Burlington Savings Bank. The money, represented by the deposit, was the savings of one Fred Little, known to both parties as "Uncle Fred." As of August 25, 1961, the deposit was in the nature of a trust account, with Fred Little as trustee for Esme A. Little, the appellant here, with a reservation of the right of revocation in Fred Little. On October 4, 1961, Fred Little revoked the trust account for the benefit of Esme Little and established a joint account, with the right of survivorship, in his name and those of the two defendants, Russell and Martha Little. The account then remained unchanged until the death of Fred Little on October 31, 1961, at the age of 92. The plaintiff, Esme, was a grandniece of the late Fred Little, and the defendant, Russell Little, was his nephew.

The plaintiff's brief first presents claimed error on the part of the chancellor in alleged failure to make a finding as to the mental capacity of Fred Little at the time he revoked the trustee account for Esme Little, and established the joint account with the defendants. Error is also alleged in the failure of the chancellor to find in accordance with the request to find of the plaintiff that Fred Little was incompetent at the time of the change in the bank account.

The undisputed findings made below disclose that Fred Little was a frugal, self-reliant individual, unable to read or write except in the matter of his own name. He kept his money, amounting to a little over $28,000, for many years in the Burlington Savings Bank, although the number and nature of the deposits representing this money were changed by him with considerable frequency over the years.

Fred Little had made his residence with the plaintiff, her father and mother, in Monkton since about 1946. He continued to live with the plaintiff after the death of her father, and later her mother, and continued such residence with the plaintiff after a time that she moved from Monkton to Vergennes. At the commencement of his residence with the plaintiff, Fred paid $4 a week for his board, room, and laundry, increasing this amount to $5 per week after the death of plaintiff's father, and to $7 a week after the death of the mother.

Fred Little, however, did not constantly stay at the home of the plaintiff. During the spring and fall he would "make the rounds" visiting other relatives for varying lengths of time. At one time he visited the defendants, who live in Shelburne, for a period of three months after he had been a patient in the DeGoesbriand Hospital in Burlington. He also used to visit at the home of another nephew, Arthur Little in Ferrisburg.

It is apparent from the record of his accounts at the Burlington Savings Bank that, in the last seven years of his life, Fred Little, as many aged people do, frequently changed his mind on which relatives should eventually be the beneficiaries of his bounty. In 1954, for example, he set up a joint account in the amount of $500.00 for a niece, Betty Marie Little. In April 1956, he established a trust account for Rena L. Ross, another niece, in the sum of $1,050.00. On April 18, 1960 he established a trust account for Russell and Martha Little of some $22,000.00 and on April 27, 1961, he established a trustee account for Archie Little and Dorothy Little of some $6,000.00. On August 2, 1961, Fred Little set up two trust accounts, one of them for Russell and Martha Little of over $6,000.00 and one for Martha, alone, of $20,000. Significantly, perhaps, Fred Little reserved the right to revoke all of these accounts which he had set up, and all of them were revoked by him at one time or another.

The account upon which the plaintiff's claim is based here was first established on August 2, 1961 by Fred Little as trustee for Esme Little, reserving the right of revocation in the following phrase: "I reserve the right to revoke in whole or in part the trust hereby created by withdrawal or other notice to the bank during my lifetime." On October 4, 1961, this account had been increased to the amount of $28,103.20.

In the latter part of September 1961, Fred Little entered the Mary Fletcher Hospital, in Burlington, for treatment of a cancerous condi-

tion of the prostate which proved incurable. He was released from the hospital on October 2, 1961, and went to live with the defendants where he remained until his death on October 31, 1961. On October 4, 1961, he requested the defendant, Martha Little, to drive him to the Burlington Savings Bank. At this time he revoked the trust account in the name of the plaintiff, Esme, and established the joint account in the names of the defendants. After his death, defendants transferred the joint account into a deposit in their two names alone and the plaintiff brought her action.

Plaintiff squarely raised the question of the competency of Fred Little to understand the nature of his acts on October 4, 1961 in her complaint and she was entitled to a finding of fact upon this question. Despite her briefed contention to the contrary we think that such finding was made in No. 58 of the findings of fact:

"Plaintiff does not claim that Fred was non compos mentis or that he was suffering from senile dementia on Oct. 4, 1961, but she does claim that when he was taken to the hospital for the last time he was not of 'sound mind or oriented.' Rather, that he was in a weakened condition, physically and mentally, that he did not have sufficient capacity to understand the nature and effect of the transaction on Oct. 4, 1961. There is no believable evidence to this effect, and we cannot so find. On the contrary, the Court finds on Oct. 4, 1961 Fred knew what he was doing and did what he intended and desired to do. There was evidence that he possessed and retained his mental faculties to the last and the Court so finds."

The plaintiff has attacked this finding on the ground that it is a "negative" finding and not a positive one on the competency of Fred Little. But the finding is positive that "Fred knew what he was doing and did what he intended and desired to do" and "that he retained his mental faculties to the last." This is an affirmative finding of Fred Little's competency to engage in the transaction here questioned. The chancellor's statement that "there was no believable evidence" that Fred Little did not have the capacity to understand the nature of his acts is a statement that in the trier's judgment the credible evidence did not produce a preponderance of evidence upon this subject sufficient for a finding to be made to this effect. *Crossman* v. *Crossman,* 124 Vt. 127, 197 A.2d 818; *Strong* v. *Strong,* 123 Vt. 243, 246, 185 A.2d 924.

Plaintiff's exception to the chancellor's failure to find in accordance with her request that Fred Little was incompetent must, in view of the fact that we have decided that a finding was made that Fred Little was competent, be viewed as an exception to such finding. On an appeal to this Court for a review of findings on exceptions thereto a finding must stand if supported by any substantial evidence, although there may be inconsistencies, or even substantial evidence to the contrary. We must read the evidence in support of the findings, if reasonably possible, when considered as a whole. *Cody Chevrolet* v. *Royer,* 123 Vt. 389, 392, 189 A.2d 554; *In re Petition of Bolduc,* 121 Vt. 20, 21, 146 A.2d 240. In such consideration we must have in mind that it is the trier of fact to whom is given the sole determination as to the weight of the evidence, the credibility of the witnesses, and the persuasive effect of the testimony. 12 V.S.A. §2385; *Crossman* v. *Crossman, supra; Gilbert* v. *Gilbert,* 123 Vt. 200, 202, 185 A.2d 460.

Plaintiff offered evidence that Fred Little at one time seemed confused in counting out a sum of money, and that on another occasion he seemed to be mistaken on an education afforded a younger brother. Other testimony was to the effect that Fred was in great pain, and some fear was expressed among relatives that he might do away with himself.

The evidence of the defendants was that Fred Little remained in full possession of his faculties until his death. It was their testimony that Fred Little made all arrangements for the transfer of bank accounts on October 4, 1961, without knowledge on the part of the defendants, that such transfer was to be made, or any suggestion to Fred that it be done.

The findings made it apparent that the chancellor gave considerable weight to the testimony of Mr. Neil W. Whitman, an assistant treasurer of the Burlington Savings Bank, with whom Fred Little had transacted much of his bank business over ten or fifteen years, and with whom he made the transfer arrangements on October 4.

It was Whitman's testimony that on October 4 he came to Martha Little's car, parked in front of the bank, to do business with Fred, because of Fred's physical weakness. He stated that Fred seemed "normal," having in mind his past contacts with him, and told him that he wished to draw some cash from his account. Fred also stated he wanted to change the account to a joint one with Russell and

Martha Little. Mr. Whitman explained to Fred Little the meaning of a joint account, in that any of the joint owners could withdraw funds. Fred stated that he understood this and knew what he was doing. While Martha Little was in the back seat of the car she took no part in this conversation.

Whitman returned to the bank, prepared the necessary papers, and brought them back to the car for Fred Little's signature. While he did not read the papers in full to Fred Little, he did explain their contents. Both Fred Little and Martha Little signed signature cards at this time, and Fred stated to Whitman, "Got to look out for those who take care of you." Plaintiff has excepted to the findings relative to Whitman's testimony on the ground that his contacts with Fred Little were too infrequent for him to testify as to Fred's "normal" condition. This was a matter of credibility for the trier's determination and cannot be considered by us.

In connection with his determination of Fred Little's competency to revoke the trust account and establish the joint account on October 4, 1961, the chancellor, in addition to the testimony of Mr. Whitman, had before him a record of a number of revocations of similar trust accounts by Fred Little in the past, and the establishment of new bank accounts by him. There was at least a reasonable presumption that regardless of his educational lack, Fred Little had acquired a practical experience in revoking and establishing bank accounts that would serve to enable him to know what he wanted to do, as well as what he did do, at the time of the October 4 transfer.

The plaintiff asserts that Fred Little's action on October 4, 1961, in transferring his bank deposit from a trust account to a joint account with Russell and Martha Little operated to strip himself of everything he had for his sustenance or the payment of his future care and expenses. The improvidence of such a transaction on his part, says the plaintiff, was persuasive evidence of mental incapacity or imposition or misunderstanding, and she cites the Connecticut case of *Farley* v. *Fitzsimmons*, 97 Conn. 372, 116 Atl. 606, as authority for her position.

But the factual situation in the Farley case and that presented here is quite different. In the Farley case the deceased was paralyzed and unable to speak. She transferred to the defendant her bank accounts by merely nodding her head in answer to questions propounded to her by the defendant and signing the transfer papers with a mark. By this act she completely divested herself of all of her property.

The transaction here was made with a bank officer, and not with the defendants. It was made at the initiative of Fred Little, after a full explanation of its effect by the officer of the bank to Fred, and with a declaration on Fred's part that he understood what he was doing. Further, in creating the joint account Fred Little did not divest himself of all interest in the money so deposited. He still retained the right to use any or all of it for his own purposes, a right which could only be lost in the event that either or both of the other joint tenants withdrew the total account.

Here we do not have the improvident transaction entered into by a person rendered incapable of both action and speech, which confronted the Connecticut court in the Farley case and which was considered by that court persuasive evidence of incapacity or imposition.

The record shows substantial evidence to support the finding of the chancellor that Fred Little knew what he was doing on October 4, 1961, and was in possession of his faculties. This is enough to sustain the finding here. Plaintiff takes nothing by her claims of error relative to a lack of finding of competency, and that a finding should have been made that Fred Little was incompetent at the time of the transfer of the bank account.

Plaintiff next briefs her exceptions to various findings of fact, all of which have to do with the refusal of the chancellor to find that Fred Little had effectuated a completed inter vivos gift to the plaintiff of his savings account, and that she at all times had legal possession and control of such account.

Plaintiff's claim is that Fred Little's creation of the trust account for the plaintiff, coupled with a claimed delivery of the passbook of such account to the plaintiff, effectuated a completed inter vivos gift to her. This claim cannot, and is not, made by virtue of the fact that a trust account was established for the plaintiff by Fred Little. This trust, by its expressed terms, was subject to his revocation and thus was still executory, incomplete and imperfect and was not enforceable. *Jerry Estate* v. *Burlington Federal Savings and Loan Assn.*, 114 Vt. 463, 469, 49 A.2d 93, 168 A.L.R. 1265.

The reservation of the right to revoke the trust account distinguishes the present case from the case of *Smith* v. *Deshaw, Admr.*, 116 Vt. 441, 78 A.2d 479, relied upon by the plaintiff. In the Deshaw case there was an unequivocal declaration in writing by the owner

of personal property creating a trust for the benefit of the donee. While the donor reserved the right to use income and principal of the trust for her support during her lifetime she did not reserve a power of revocation in herself, nor did the donor revoke, or attempt to revoke, the trust she had created during her lifetime.

This Court, through former Chief Justice Moulton, has said:

"To constitute a gift inter vivos there must be an intention on the part of the donor to transfer the title to the property immediately and irrevocably accompanied by such delivery as will place the donee in complete possession and control of the same, unless the delivery is to a third party for the donee. The existence of these elements is for the trier of facts to decide." *Colby's Executor* v. *Poor,* 115 Vt. 147, 152, 55 A.2d 605.

The claim of the plaintiff is that Fred Little made such a delivery of the bank book (the title to the property) to her as to effectuate an immediate transfer of the bank account to her, and to give her complete possession and control of the account.

The burden of proof of establishing her claim, of course, is on the plaintiff. But, because the record does not disclose that the plaintiff ever asserted any claim upon the bank account until after the death of the alleged donor, her claim must be regarded with suspicion by courts, and it is the policy of the law to receive it with caution requiring clear and convincing proof of its support. *Colby's Executor* v. *Poor,* 115 Vt. 147, 154, 55 A.2d 605. It follows that the burden of proof here upon the plaintiff in establishing her claim is more than by a preponderance of evidence. The burden here is for evidence so clear and convincing in proof that it will overcome the initial suspicion of the claim with which the courts must receive it.

The essential question for the chancellor's determination was one of intent on the part of Fred Little. Did Fred Little have the intention to divest himself of all control and dominion over the money represented in the trustee account so as to constitute an inter vivos gift to the plaintiff? Proof of delivery of the bank book to the plaintiff, alone, does not establish an intent to constitute a gift inter vivos. The evidence must also convincingly show such an intent on the part of the alleged donor to surrender all present and future dominion over the deposit to the donee that he would have been answerable in dam-

ages as a trespasser to her if he had retained control over the deposit, and she had brought an action against him during his lifetime. *Rose v. Osborne,* 133 Me. 497, 180 Atl. 315, 317; *Bank of Manhattan Trust Co. v. Gray,* 53 R.I. 377, 166 Atl. 817, 818. See 38 C.J.S. Gifts, p. 800.

The plaintiff has excepted to the findings of the chancellor that the bank book in question was always in the control, and hence in the possession of Fred Little. The evidence relative to the possession of the bank book, the strong box in which it was kept, and the keys that in turn unlocked the strong box, was strongly conflicting. The chancellor found in accordance with the evidence of the defendant. The weight of the evidence and the credibility of the witnesses being for the sole determination of the trier of fact, we cannot review them here and such findings being supported by substantial evidence, they must be sustained here.

However, if such findings had been in error, and plaintiff was entitled to findings that the bank book had been in her possession, we think that a decree dismissing her complaint would still have to be entered.

Nothing appears in the record here to disclose any written or parol declaration on the part of Fred Little to make an absolute gift of the bank account to the plaintiff during his lifetime. An intent quite to the contrary is clearly indicated by the right of revocation retained by Fred Little at the time of establishing the trust account, and which right of revocation he exercised during his lifetime.

There was not here the perfect, completed, voluntary trust which this Court found to exist in the case of *Conn. River Savings Bank v. Admr. of Estate of Samuel Albee,* 64 Vt. 571, 575, 25 Atl. 487, 33 Am. St. Rep. 944. The reservation of the right of revocation did not place the deposit beyond the recall or control of Fred Little and it was not a completed gift. *Pope v. Burlington Savings Bank,* 56 Vt. 284, 288, 48 Am. Rep. 781.

The chancellor, as the trier of facts, had the sole determination on the evidence adduced before him, to determine if plaintiff had established the necessary elements to prove an inter vivos gift to her from Fred Little. The question whether, on the facts, there was a gift is one of mixed law and fact. The decision of the chancellor must stand if it is factually supported. *Colby's Executor v. Poor,* 115 Vt. 146, 152, 53 A.2d 52.

The decision made by the chancellor here was that he was "unable to find that either the plaintiff or Fred intended, understood or believed that an irrevocable trust had been created for plaintiff." This was a determination by the chancellor that plaintiff had not established the necessary elements to prove an inter vivos gift to her from Fred Little. Such determination is supported by the findings of fact in the case, and we have previously established that the findings of fact were supported by credible evidence.

*The decree of the chancellor, dismissing the complaint of the plaintiff, is in accordance with the pleadings and the findings and it is affirmed.*