## Stanley R. Scribner and Catherine J. Scribner
### v.
## Richmond Farm Supply Company, Inc.

[219 A.2d 1]

February Term, 1966

Present: Holden, C. J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 5, 1966

*John A. Burgess* for plaintiff.

*A. Pearley Feen* for defendant.

**Smith, J.** This is an action in tort. The case was tried before the Washington County Court on January 21 and 22, 1965. Findings of fact were filed on February 19, 1965, and judgment was rendered for the defendant on April 12, 1965.

Plaintiffs have appealed from the judgment and the case here is

briefed entirely upon exceptions to four of the findings made by the lower court.

The claim of the plaintiffs, as established by the pleadings and the findings of fact, which are unchallenged, is that defendant, through its agents, improperly repaired or reinstalled certain elements of a Dari Kool Boumatic milker system. It is plaintiffs' claim, that as a result of this negligent reinstallation, injuries and disease were produced in the udders of the cows milked by such system, with a resultant loss of milk production and a loss of value to the animals, all to the damage of the plaintiffs.

Plaintiffs bought the milking system from the defendant in June, 1962. This system varied from other milking machines in that while other such machines apply equal pulsation rates to all parts of a cow's udder, the Boumatic system applied a pulsation rate to the rear quarters of the udder of 60 per cent, while applying a pulsation ratio of only 40 per cent to the front quarters. No exceptions are briefed to the lower court's finding that an electrically controlled pulsator regulated the suction applied to the cow's udder, and that the control box which regulated the pulsation rate at which the equipment operated, was preset at the factory.

This equipment, bought by the plaintiffs from the defendant, did not require servicing until September, 1963. It was plaintiffs' claim that improper servicing of the equipment at this time, performed by an employee of the defendant, resulted in a reversing of the proper pulsation rates applied to the front and rear udder quarters of the cows. This, alleged the plaintiffs, caused injury to the cows and a resulting mastitis.

Finding No. 7, to which objection is first made, states:

"The evidence failed to establish the plaintiff's claim that the pulsation control box was improperly wired by the defendant."
Exception is also briefed to Finding No. 8:

"The only evidence presented relative to the improper wiring of the pulsation control box was that of the owners of the farm, and Mr. Scribner, himself, did not do the wiring."

"On an appeal to this Court for a review of findings on exceptions thereto . . . we do not weigh the evidence as to its persuasive effect, and the credibility of the witnesses is for the trier of facts to determine. A finding must stand if supported by any substantial evidence, although there may be inconsistencies, or even substantial evidence to the contrary. We must read the evidence in

support of the findings, if reasonably possible, when considered as a whole." *In re Petition of Bolduc,* 121 Vt. 20, 22, 146 A.2d 240. Cited in *Cody Chevrolet* v. *Royer,* 123 Vt. 389, 392, 189 A.2d 554.

The plaintiffs' claim of negligence on the part of the defendant is that a service man of the defendant improperly installed a new switch box in the milking system. The only direct testimony to this effect was given by plaintiff Stanley R. Scribner, who testified, "he put the switches in backwards; he wired it in backwards."

Plaintiffs contend that this testimony was corroborated by Paul Cassavent, who was an employee and representative of the defendant, and visited the Scribner farm some two months after the installation of the switch box by the service man. His testimony was that from his observation of the milking equipment at that time, the only thing wrong with the system was a short in the line.

Under cross-examination he testified, "During the time Mr. Burnham fixed the boxes, it was wired backward, giving a ratio of 60/40 again, I am assuming this is correct . . . giving a ratio of milking the front teats 60% of the time and the rear teats 40% of the time:"

The answer of the witness is not direct evidence that Mr. Burnham, the service man, did wire the boxes backward. The witness bases this answer upon an assumption that Mr. Scribner's testimony was correct, and not upon his own knowledge that such backward wiring was actually done. His direct testimony, based on his own observation, as we have just noted, was that the only defect then existing was a short in the line. This was contrary to the evidence presented by the plaintiffs.

In construing the findings to support the judgment, as we are required to do, it appears from Findings 7 and 8 that the trial court in these findings, determined that if there was any defect in the wiring, it was not caused by the negligence of the defendant or its agent. Finding No. 3 makes plain that any defect in the wiring of the control box which controlled the pulsation rate, was the fault of the manufacturer and not of the defendant, which is in support of Findings 7 and 8. Both findings are supported by the evidence, although there is some evidence to the contrary, and no error is found. *Gilbert* v. *Gilbert,* 123 Vt. 200, 203, 185 A.2d 460.

Plaintiffs have also briefed their exception to Finding No. 11: "It is difficult to eliminate all possible causes of mastitis and localize the cause for active mastitis in this herd as the problem of pulsation."

We construe this finding to mean that the court found that it was impossible to pinpoint the presence of mastitis in this herd as being caused by the milking machine. It is supported by the testimony of the plaintiff himself, who testified that he had always had mastitis in his herd and probably always would.

Finding No. 12, also excepted to, is as follows:

"The Court finds that even if the pulsations were the cause of the predisposition to active mastitis, this could have been controlled by the plaintiffs in taking the teat cups off the cows' udders, either rear or front quarter, at an earlier time. In other words, even though the rate of pulsation was found to be 60% in the front quarter and 40% in the rear quarter because of the improper wiring, and the Court cannot so find, the plaintiffs should have operated the teat cups in such a fashion that they would be removed from each quarter upon the udder being milked out."

What the lower court was apparently attempting to do in this rather involved finding, was to state that if it found negligence on the part of the defendant, it would also have found contributory negligence on the part of the plaintiffs. The fact that the lower court did not find the plaintiffs had established the negligence of the defendant makes the purported finding mere surplusage and immaterial. The exception need not be considered by us. *Peterson* v. *Moulton* et al, supra.

The entry is *"Judgment Affirmed."*