# Howard S. Mott, and Frances C. Mott v. Drury L. Vinton, Mott Chevrolet, Inc., Vinton Motors, Inc., General Motors Corporation

[281 A.2d 37]

No. 134-69

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed June 22, 1971

414

*Lee E. Emerson,* Barton, for Plaintiffs.

*Free & Bernasconi,* Barre, for Drury L. Vinton.

*Downs & Rachlin,* St. Johnsbury, for General Motors Corporation.

**Shangraw, J.** This is a chancery action tried by the Court of Chancery, Caledonia County. Findings of fact were filed on August 5, 1969, and a decree later issued dismissing the plaintiffs' bill of complaint as to all of the defendants. Plaintiffs timely filed a notice of appeal to this Court for review.

Frances C. Mott, and Howard S. Mott are mother and son. Frances died subsequent to the date that this action was brought. Plaintiff, Howard, is the duly appointed, qualified and acting administrator of his mother's estate, and as such is a party plaintiff herein.

Sometime during the summer of 1960, the plaintiff, Howard, came to St. Johnsbury from Long Island, New York. Prior to his coming to St. Johnsbury he had been engaged in the sale and exchange of Chevrolet Motor vehicles, and from 1938 to 1951 was an active partner in a Chevrolet dealership.

Howard was familiar with the business methods of General Motors Corporation.

Soon after his arrival in Vermont he became interested in a Chevrolet dealer agency then owned by people by the name of Murphy. Following a period of negotiations with the Murphy owners, the plaintiffs acquired the Chevrolet agency. Its properties were heavily mortgaged and the owners in financial difficulty.

Upon acquisition of the Chevrolet agency properties from the Murphys, the plaintiffs organized a corporation under the name of Mott Chevrolet, Inc., and the title of said agency and its properties were transferred to this newly formed corporation.

Upon the organization of Mott Chevrolet, Inc., 450 shares of preferred stock, having a par value of $100 per share, were issued to the late Frances C. Mott, for which she contributed the sum of $45,000. Three hundred shares of common stock, having a par value of $100 per share were issued to the plaintiff, Howard.

On December 6, 1960, Mott Chevrolet, Inc., entered into a "Dealer-Selling Agreement" with the defendant Chevrolet Motor Division of defendant, General Motors Corporation. This agreement in part provided that no change in ownership, financial interests or active management of the Dealer shall be made without the prior written approval of Chevrolet.

From the outset the business of Mott Chevrolet, Inc., was under-capitalized and it had no cash for working capital. It had no bookkeeper and needed additional experienced salesmen. Its customer service was inadequate and the corporation was incompetently managed.

In the fall of 1961 the corporation was in financial straits and was faced with an advertised sheriff's sale under a third mortgage which required payment of approximately $12,000 to satisfy the mortgage and forestall the sheriff's sale. Following several conferences between plaintiff, Howard, and defendant, Drury L. Vinton, the latter advanced $12,000 to satisfy the sheriff sale demands. Later, Mr. Vinton advanced a further sum of $30,000 for working capital, making a total contribution by him to Mott Chevrolet, Inc., of $42,000.

The capital structure of the corporation was changed to give defendant, Vinton, majority control. Plaintiffs sur-

rendered their stock and on January 8, 1962, the following new shares of common stock of Mott Chevrolet, Inc., were issued: 400 shares to Frances C. Mott; 403 shares to Howard S. Mott; one share each to Robert R. Wakefield and Howard S. Mott, Jr; and 806 shares to defendant, Drury L. Vinton.

Sometime during February, 1962, Mr. Vinton discovered that the entire sum of $42,000 he had made available to the corporation had been expended. There was no cash to pay the employees or other commitments of the corporation. The corporation was insolvent and was at the time he supplied the $42,000.

The contribution of $42,000 by Vinton to the corporation, the reorganization of the capital structure of the corporation and the issuance of a controlling interest of stock to Vinton was all done without the knowledge of, or authorization by, the defendant General Motors Corporation, contrary to the terms and provisions of the "Dealer Selling Agreement".

As a result of a meeting of the directors of Mott Chevrolet, Inc., held during February, 1962, it was voted to suspend the payment of salaries to all officers, directors and management employees of the corporation. Howard left the corporation and sought employment in Newport, Vermont. Following his departure Howard did not again manage the corporation. Management of the corporation was assumed by defendant, Vinton.

By a writ dated August 8, 1963, the defendant, Vinton, instituted suit against the plaintiffs in Caledonia County Court demanding damages in the amount of $50,000 for falsely representing the financial condition and situation of Mott Chevrolet, Inc., for the purpose of inducing the plaintiff to invest in the corporation to his financial loss. This suit was later discontinued on January 18, 1967.

After Howard left the corporation in February, 1962, and went to Newport, he and the defendant, Vinton, attempted to negotiate their matters of difference concerning the corporation and their stockholdings therein. In October, 1963, they met at Barton, Vermont, where it was orally agreed that defendant, Vinton, would purchase Howard's stock, and that of his mother, in Mott Chevrolet, Inc., for the sum of $19,000. It was also agreed that certain charges outstanding against the stock were to be discharged, and the above fraud suit was

to be discontinued. It was further agreed that this oral agreement would be reduced to writing and for this purpose a meeting was scheduled at the office of an attorney in St. Johnsbury.

Prior to these negotiations defendant Vinton had invested an additional $55,000 in said corporation and was anxious to secure a new so-called Chevrolet franchise. In the meantime the corporation was operating under the Mott franchise.

On November 4, 1963, Howard S. Mott, with his attorney Frank E. Wellersdieck, Jr., of New York, and defendant, Vinton, with his attorney, Arthur Graves, met in Mr. Graves' office in St. Johnsbury, where further negotiations were had, and a document was prepared embodying the terms and conditions of the sale of Howard's stock and that of his mother to defendant Vinton. This agreement was signed by plaintiff, Howard, on November 4, 1963, and subsequently by Frances C. Mott.

Plaintiff, Howard, at all times material was duly authorized to act for his mother Frances.

In December, 1963, Howard left Newport and returned to New York. He did not thereafter request, demand or attempt to return to the active management of the corporation or attempt to assume any control over it.

This agreement designated the plaintiffs, as sellers, Drury L. Vinton as buyer, and named the Howard National Bank and Trust Company as escrow agent. It, in part, referred to the 805 shares of stock of Mott Chevrolet, Inc., owned or controlled by the plaintiffs, which included 400 shares outstanding in the name of Frances C. Mott and represented by certificate No. 3. The agreement also listed liens and attachments on the stock outstanding in the name of Howard S. Mott.

Simultaneous with the delivery of an executed copy of the agreement, it was provided therein, that the buyer shall deposit with the escrow agent his check of $19,000 payable to the order of the escrow agent, and at the same time the sellers were to deposit with the escrow agent the above 805 shares of stock properly endorsed. Certain releases were to be executed by the plaintiffs and defendants, Drury Vinton and Mott Chevrolet, Inc., and delivered to the escrow agent.

Out of the agreed purchase price of $19,000 the escrow agent was authorized to pay and cause to be discharged any

and all liens and encumbrances on the stock belonging to the sellers, or either of them, and deliver the 805 shares to the buyer. The balance of the agreed purchase price was to be paid to plaintiffs' attorneys.

The agreement also contained the provisions that in the event certificate No. 3, representing 400 shares of stock issued to Frances C. Mott was lost or mislaid, that the sellers shall deliver to the escrow agent such certificate as shall be issued by the corporation in its place.

By letter dated November 12, 1963, Mr. Wellersdieck, plaintiffs' attorney, notified Mr. Graves, then counsel for defendant Vinton, that Mrs. Frances C. Mott's stock certificate, No. 3, representing 400 shares of stock of the corporation, could not be located. Mr. Wellersdieck advised that he was sending Mrs. Mott an application for a surety bond to be issued by the Home Indemnity Company in the amount of $9,500 to be written in favor of Mott Chevrolet, Inc., in order that a new certificate could be issued in lieu of the lost certificate.

By letter dated November 18, 1963, Mr. Wellersdieck notified Mr. Lyman of Chevrolet Division of General Motors Corporation that "Mr. Mott and his mother have reached an agreement with Mr. Drury L. Vinton for the purchase by Mr. Vinton of the Motts' stock."

On November 20, 1963, Mr. Graves acknowledged Mr. Wellersdieck's letter of November 12, 1963. This letter advised of the defendant, Vinton's willingness to then sign the escrow agreement, provided certain requirements were met by the plaintiffs. This included the requirement that a bond be furnished Mott Chevrolet, Inc., of not less than $10,000 to protect the corporation by the issuance of a new certificate in favor of Mrs. Mott. Mrs. Mott never furnished a bond and by reason thereof Mr. Vinton did not sign the escrow agreement.

At this point we call attention to the following provisions contained in the escrow agreement.

"This indenture is wholly contingent upon the issuance and delivery of a Dealer Selling Agreement to Drury L. Vinton by Chevrolet Division of General Motors Corporation for a period expiring not earlier than October 31, 1965 or for five years, in the customary form for franchise dealers, and in the event that such a Dealer Selling

Agreement shall not be delivered to the said Drury L. Vinton for any reason whatsoever on or before January 1, 1964, unless such time shall be extended in writing, this indenture shall be null and void for all purposes and of no effect whatsoever, and the escrow agent shall return forthwith to the sellers their said certificates of stock, and the releases executed by them to the BUYER his check for $19,000.00, and to the parties respectively the several releases executed by Drury L. Vinton."

Plaintiffs did not at any time, nor did anyone on their behalf, request an extension of time within which to produce certificate No. 3 or furnish a bond for the purpose of obtaining a new certificate.

Sometime subsequent to January 1, 1964, stock certificate No. 3, issued to Frances G. Mott, was found by plaintiff, Howard, and delivered to his counsel, Mr. Wellersdieck. In July, 1964, plaintiff, Howard, tendered the Mott stock to defendant, Vinton, which included the "lost" certificate. Defendant Vinton then refused to accept the stock or pay the $19,000.

General Motors Corporation knew of plaintiffs' and defendant Vinton's difficulties, and from time to time attempted to assist them in adjusting their matters of difference.

In June, 1964, General Motors Corporation cancelled the Mott franchise. In August of 1964 it granted a Chevrolet franchise to Vinton Motors, Inc., a corporation formed by the defendant Drury L. Vinton.

Plaintiffs aver in paragraph 19 of their complaint that it was understood and agreed between Mr. Mott and Mr. Vinton, at their meeting in Barton, Vermont, during 1963, that Mr. Vinton and Mott Chevrolet, Inc., were to have the privilege and benefits of the General Motors Corporation Chevrolet franchise until their agreement could be fully consummated.

Plaintiffs further aver that after January 1, 1964, the defendants, Vinton and Mott Chevrolet, Inc., continued to receive Chevrolet automobiles from General Motors Corporation. It is also alleged, and so claimed in their briefs, that Vinton failed to perform the Barton agreement, and that it would be unconscionable and inequitable for him to receive the benefits of the Chevrolet franchise after January 1, 1964.

The chancellor made very comprehensive findings of fact; paragraphs 1 to 103 inclusive. Plaintiffs have challenged six of these findings and also claim error by the chancellor's failure to comply with certain requested findings, and to the decree. We now shall consider these assignments of error in the order in which they are briefed.

The chancellor's finding No. 39, hereinafter quoted in this opinion, relates to the agreement made by Howard and Vinton at Barton, Vermont, concerning the proposed sale and purchase of the Mott stock in Mott Chevrolet, Inc. This finding embodies the substance of plaintiffs' requested finding No. 32, excepting that the requested finding contains, in part, the following, "defendant Vinton was to have the right to continue to operate under the Mott franchise until he could procure one of his own." This fact is not denied by Vinton.

Plaintiffs take the position that the Chevrolet franchise was a valuable property right and that after January 1, 1964, the defendant, Vinton, derived the benefits of its use. Plaintiffs' claim is predicated on the assumption that the defendant, Vinton, failed to perform the agreement which was later reduced to writing and overlooks the disadvantages to which Vinton was subjected by reason of the proven fact that the plaintiffs failed to perform, rather than Vinton. The record demonstrates that compensation for the use of the Chevrolet franchise was never contemplated by the parties. It is apparent from the record that the plaintiffs did not consider the continued use by Vinton of the franchise of any value in excess of the agreement to accept the $19,000 upon the terms agreed upon.

Plaintiffs assign error by the chancellor's failure to comply with the following requested finding.

"37. Defendant Vinton failed to exercise good faith in carrying out the agreement arrived at in Barton and in failing to consummate it by entering into the signing and completion of Plaintiffs Ex. 13."

Exhibit 13 is the agreement reduced to writing in the office of attorney Graves. Plaintiffs claim that the findings are silent on whether defendant, Vinton, exercised good faith, or not, in refusing to sign and complete this exhibit.

While the chancellor did not specifically find that Mr. Vinton acted in good faith in not signing Plaintiffs' Exhibit No. 13, the implication and inference of good faith on the part of Vinton is found in the chancellor's findings, 68, 70, 71, 72, 73 and 76.

By finding numbered 77 the chancellor determined that "Defendant Vinton did not execute the escrow agreement because of failure on part of the plaintiffs to do and perform the acts required of them by said agreement."

The deposit of the Mott stock with the escrow agent was a critical element of the contract. By letter dated November 12, 1963, Mr. Wellersdieck, plaintiffs' attorney, advised attorney Graves that certificate No. 3 could not be located and that application was being made for the issuance of a $9,500 surety bond. Later, by letter dated November 20, 1963, addressed to Mr. Wellersdieck, attorney Graves requested a surety bond in the sum of $10,000. The bond was never furnished.

Without burdening this opinion with unnecessary details we are satisfied that Finding 77 is amply supported and that the chancellor properly declined to comply with plaintiffs' requested finding No. 37. The absence of good faith on the part of Vinton to consummate the transaction is not demonstrated by the record.

■ On appeal it will be assumed that the lower court inferred such facts from the other facts certified as it ought to have done or might fairly have done. *Anton* v. *The Fidelity & Casualty Co.*, 117 Vt. 300, 304, 91 A.2d 697 (1952).

■ The plaintiffs urge that the chancellor improperly refused to comply with the following requested finding.

> "44. Defendant Vinton produced no evidence he had been prejudiced by the tender of the stock in July 1964 and the Court finds he has not been prejudiced."

The proof does not support the requested finding.

During period from 1961 to 1964 the defendant, General Motors Corporation, indicated to both Mr. Mott and Mr. Vinton that it was not satisfied with the manner in which the franchise was being used. Between February, 1962, and November, 1963, this defendant had endeavored to sell the Chevrolet franchise.

Mr. Vinton had $97,000 invested in the business. He testified that it was essential for him to receive the franchise by January 1, 1964. His testimony reveals that he desired to complete plans for increasing the dealership facilities and to this end place contracts in order that the necessary work could be done in the following summer. He also testified that it was necessary for him to make arrangements for financing, and that he had to have the Chevrolet franchise by January 1, 1964, in order that he would have the time during the winter to make the necessary plans.

Performance on the part of the plaintiffs by not later than January 1, 1964, was of importance to Vinton. This is further evidenced by the last paragraph of the escrow agreement, Plaintiffs' Exhibit No. 13, which provided that the agreement would be null and void unless the franchise was obtained by Vinton by January 1, 1964.

The Chevrolet franchise to Mott Chevrolet, Inc., was cancelled or revoked June 5, 1964. It was not until July, 1964, that the Mott stock was tendered to Vinton.

The delay on the part of the plaintiffs to perform their part of the contract rendered the certificates worthless to Vinton at the time that the Mott stock was tendered in July, 1964. Had the plaintiffs performed according to the terms of the escrow agreement this consequence would have been avoided.

Plaintiffs' requests 50–54, in slightly varying language, are in essence a request that the chancellor find that the defendants Vinton and General Motors Corporation entered into a fraudulent scheme, the purpose of which was to grant the Chevrolet franchise to Vinton at the expense of the Motts and deprive them of the agreed price of $19,000 for their stock.

In our consideration of the foregoing requests, attention is called to findings Nos. 100 and 103 which are not directly challenged.

"100) The Chancellor is not satisfied or convinced by the required measure of proof and therefore does not find that there was a 'fraudulent scheme' participated in by the defendants to obtain a new dealership agreement for Vinton Motors, Inc. without first effecting a settlement with the plaintiff Howard for the Mott stock in Mott Chevrolet, Inc."

"103) The Chancellor is not satisfied by the believable evidence that there was a conspiracy, a fraudulent scheme, or that there was a plot of any kind entered into by the defendants, or any two of them, the purpose of which was to cheat, defraud or deprive the plaintiff of any sum or sums of money he desired to obtain directly or indirectly from Mott Chevrolet, Inc., or from any source in connection therewith."

In partial support of plaintiffs' claim of conspiracy, they refer to the following finding.

"82) It was apparent to all parties of interest, including plaintiff Mott, defendant Vinton and defendant General Motors Corporation in the Fall of 1963, that defendant Vinton would soon acquire the Mott Chevrolet, Inc. franchise."

In referring to finding No. 82, plaintiffs, in their brief, inquire, "By what circuity of reasoning did the court arrive at such conclusion?" To this inquiry we have only to look at the record. It is undeniable and well understood between the Motts and Vinton that, upon a change of ownership of Mott Chevrolet, Inc., a new franchise would be issued. This was within the contemplation of these parties as evidenced by the escrow agreement.

Findings Nos. 100 and 103 are amply supported by the evidence.

Plaintiffs challenge the following finding.

"39) The last part of October 1963 the plaintiff Mott and defendant Vinton met at the Barton Hotel, where it was orally agreed that defendant Vinton was to purchase plaintiff Howard's stock and his mother's (Frances) stock in Mott Chevrolet, Inc. for the sum of $19,000; that certain charges outstanding against the stock were to be discharged, and the fraud suit described in Paragraph 37 above was to be discontinued."

Plaintiff, Howard Mott, himself testified that he and Vinton met in Barton, Vermont, in late 1963 and arrived at an agreement concerning the sale and purchase of Motts' interest in Mott Chevrolet, Inc. In response to a question by his

attorney as to what the conversation relating to this agreement was, Mr. Mott testified as follows:

> "We talked over the previous conversations on the matter of settlement, and after a few pro and con offers, we agreed upon a net figure of $19,000. It was also agreed that the suit Vinton had against Mott would be withdrawn and concluded. It was also agreed that in the settlement certain obligations that I had against my stocks would be paid off, leaving the stock free and clear; and it was agreed that Mr. Vinton would operate under my franchise until such time as he was able to obtain his own franchise. After we had talked it over, I asked him if that was it, and he said 'That was it', and stuck out his hand and we shook and agreed; and that was the deal."

Finding No. 39 is supported by substantial and uncontroverted evidence and must stand. *Cody Chevrolet, Inc.* v. *Royer, et al.*, 123 Vt. 389, 392, 189 A.2d 554 (1963).

Plaintiffs claim that the following finding is without evidentiary support and contains an erroneous conclusion of law.

> "42) The Chevrolet franchise for the St. Johnsbury and Caledonia County area was at the time in question a valuable franchise; that is valuable to one who possessed the necessary capital to use it profitably."

The evidence is uncontradicted, that under the management of Howard Mott, the Mott Chevrolet, Inc., was undercapitalized and in financial distress. In 1962 and 1963 General Motors Corporation was seeking a new Chevrolet dealer in the Caledonia County area. Vinton came to Mott's rescue and invested a large sum of money in the Mott Corporation. While the business never became a profit-making organization, by the spring of 1964 it was beginning to show its potential.

In operating under a Chevrolet franchise it must be acknowledged that a satisfactory and sufficient financial structure is a necessary prerequisite in order to successfully conduct such a business, not necessarily naked ownership. Obtaining a Chevrolet franchise was all important to Vinton, considering his investment in the business. At least in the light of its importance to Vinton, such a franchise was val-

uable to him, and so considered as evidenced by the escrow agreement.

The heart of the plaintiffs' objection to the foregoing finding is addressed to the latter portion thereof wherein it is stated that the franchise is ". . . valuable to one who possessed the necessary capital to use it profitably." If applied to someone other than Vinton, such a finding might well be without evidentiary support and immaterial. If so, it can be disregarded without affecting the result of material findings. *Bagalio* v. *Hoar,* 118 Vt. 384, 387, 110 A.2d 719 (1955). By this finding, the chancellor no doubt had in mind its relevancy to the facts in this case as applied to Vinton, and we consider it in this light.

■ An exception to a finding based on the ground that there is no evidence to support it must stand if there is legitimate evidence fairly and reasonably tending to sustain it. *Loeb* v. *Loeb,* 118 Vt. 472, 488, 114 A.2d 518 (1955). Plaintiffs cannot prevail on their assignment of errors to finding No. 42.

It is claimed by the plaintiffs that the following finding of fact is without substantial evidence to support it, and that the overwhelming weight of the evidence is contrariwise.

> "43) That following the Barton Hotel meeting in October, 1963 of the plaintiff Mott and defendant Vinton, it was agreed the parties would meet at Attorney Graves office in St. Johnsbury, where the terms of their oral agreement made at the Barton Hotel would be reduced to a written agreement."

Under cross-examination, Mr. Mott testified that the so-called Barton agreement was eventually reduced to writing. He testified that he had discussed with his attorney the oral agreement and that the proposed meeting in the office of attorney Graves, which he attended with his attorney, was pre-arranged for the specific purpose of putting the verbal agreement in writing. The terms and conditions of the agreement were discussed at the St. Johnsbury meeting, and all parties agreed to the contents of what eventually became the escrow agreement. Mr. Mott also stated that the conditions, terms and provisions of the written agreement were satisfac-

tory to him and that both he and his mother eventually signed it. The substance of this evidence is also supported by the testimony of Mr. Vinton.

■ The record is replete with evidence in support of the foregoing finding. A finding which is challenged upon the ground that it is against the weight of the evidence and is not substantiated by the evidence must stand if it can be supported on any rational view of the evidence. *Randolph* v. *Ketchum*, 117 Vt. 468, 470 (1953). This is so even if there are inconsistencies, or substantial evidence to the contrary. *Cody Chevrolet* v. *Royer*, 123 Vt. 389, 392, 189 A.2d 554 (1963).

Plaintiffs contend that finding No. 48 is objectionable and prejudicial because the Chancellor found that as to the defendant, Vinton, time was of the essence. This finding reads:

> "48) It was most important to the defendant Vinton that the terms and provisions of the escrow agreement, Plaintiffs' Exhibit 13, be complied with and the sale consummated as soon as possible, as to him, time was of the essence."

■■ As hereinbefore stated in this opinion, Mr. Vinton's testimony on the necessity of an early and full compliance with the terms and conditions of the escrow agreement is uncontradicted and more than adequately supplies the evidentiary base for the soundness of this finding. To this end, a further recital of the evidence in support of the necessity of a prompt compliance by the Motts with the escrow agreement is unnecessary. Plaintiffs were afforded a reasonable time within which to perform the agreement. A finding must stand if supported by any substantial evidence. *Murray* v. *Webster*, 123 Vt. 194, 196, 186 A.2d 89 (1962).

Plaintiffs challenge the following finding as immaterial.

> "73) Plaintiff Howard did not at anytime, nor did anyone on his behalf, request an extension of time, as permitted under the provisions of the escrow agreement, Plaintiffs' Exhibit 13."

Plaintiffs contend that this finding is prejudicial because it places the onus on them to do something that they were not

called upon to do. Had the plaintiffs desired additional time within which to locate stock certificate No. 3, or otherwise comply with the terms of the escrow agreement, a written request for such an extension could have been made. This, of course, was not a mandatory provision but merely optional on their part. No such extension was requested by them. They have waited until the bringing of this suit to seek relief in equity which they might have obtained by a reasonable request of the defendants on January 1, 1964.

The plaintiffs take issue with the following finding.

> "77) Defendant Vinton did not execute the escrow agreement because of failure on part of the plaintiffs to do and perform the acts required of them by said agreement."

Plaintiffs attack the above finding on the ground that it is prejudicial and not in accordance with the evidence. This finding is supported by the uncontradicted evidence.

Neither Mr. Mott, nor his mother, furnished the escrow agent the required releases or the stock each of them owned. The Mott stock was not tendered until July of 1964. Final consummation of the escrow agreement, to a large extent, hinged upon the production by the plaintiffs of certificate No. 3, or at least a suitable bond in order that a substituted certificate might be issued by Mott Chevrolet, Inc., prior to January 1, 1964.

We must read the evidence in support of the findings. In such consideration we must have in mind that it is the trier of fact to whom is given the sole determination as to the weight of the evidence, the credibility of the witnesses, and the persuasive effect of the testimony. *Little* v. *Little*, 124 Vt. 178, 182, 200 A.2d 276 (1964).

Where a finding is challenged upon the ground that it is without evidentiary support, it must stand if there is any legitimate evidence fairly tending to support it. *E. A. Strout Realty, Inc.* v. *Elvah Wooster*, 118 Vt. 66, 74, 99 A.2d 689 (1953). Measuring plaintiffs' objection by this standard, their challenge to finding No. 77 cannot be sustained.

Plaintiffs excepted to the decree dismissing their Bill of Complaint. The question presented to this Court, on notice

of appeal from the decree, is whether the decree below is supported by the findings. *DeGoesbriand Hospital* v. *Alburg,* 122 Vt. 275, 283, 169 A.2d 360 (1961).

Plaintiffs sought specific performance of the agreement made at Barton, Vermont, which was later implemented by the escrow agreement. They also requested an accounting and other relief.

The plaintiffs have failed to perform their undertaking according to its terms. This they were required to do before they could rightfully claim the agreed purchase price of the Mott stock. See *Curtis* v. *Watson,* 64 Vt. 549, 553 (1892); 3 S. Williston, Contracts § 847 (rev. ed. S. Williston & G. Thompson 1936).

By finding No. 102, the chancellor determined that he was ". . . not satisfied or convinced by the required measure of proof that the plaintiffs are entitled to the remedy and relief prayed for in their Bill of Complaint." This conclusion is sufficiently supported by the record to justify the chancellor's decree dismissing the Bill of Complaint. The decree should not be disturbed.

*Decree affirmed.*